## HINES *v.* WARDEN OF MARYLAND PENITENTIARY

[App. No. 38, September Term, 1964.]

*Decided October 23, 1964.*

Before the entire Court.

HENDERSON, C. J., delivered the opinion of the Court.

Applicant Hines was found guilty by a jury in 1957 of murder in the first degree and was sentenced to life imprisonment in the Penitentiary. Hines did not appeal from his conviction; but in 1959 he filed a petition under the Uniform Post Conviction Procedure Act, which petition was denied by Judge Mason. Upon application for leave to appeal to this Court, we remanded the case for a factual determination whether the petitioner was entitled to a belated appeal, *Hines v. Warden,* 221 Md. 616 (1960), but we expressly declined to rule at that time upon any of the other issues presented. A belated appeal subsequently was allowed by Judge Mason, and counsel was appointed to represent Hines before this Court. We rejected contentions that the evidence was insufficient to sustain the jury's

verdict, and that the State knowingly used perjured testimony; and we affirmed the convictions, *Hines v. State,* 223 Md. 251 (1960).

Before instituting the present proceeding under the Uniform Post Conviction Procedure Act, Hines had filed several petitions for writ of habeas corpus. His petition filed in 1961 in the United States District Court was denied by Chief Judge Thomsen; the Court of Appeals for the Fourth Circuit refused a certificate of probable cause, Chief Judge Sobeloff calling the case "plainly frivolous and utterly without hope of success." In 1961 a petition filed in the Baltimore City Court was denied by Judge Harlan; a petition for writ of certiorari to that court was denied by the United States Supreme Court in 1963, *Hines v. Pepersack,* 372 U. S. 980. Thereafter, a petition for the writ addressed to Judge Watkins in federal court was denied, without prejudice to its renewal after petitioner had exhausted such remedies as the laws of Maryland afford.

Because of our unusual disposition of the petition filed under the Uniform Post Conviction Procedure Act in 1959, we think the present petition has the status of an "original or amended petition" rather than that of a "subsequent petition," which would be dismissed without hearing or appointment of counsel under Maryland Rule BK 48, unless it alleged matters that could not reasonably have been raised in the first instance.

In this connection we note that the court below apparently treated the last six of petitioner's contentions as having been finally decided against him in the habeas corpus proceeding before Judge Harlan in 1962. The court below read the language of Code (1964 Supp.), Article 27, Section 645A (a), which speaks of errors not previously and finally litigated *in any proceeding* (emphasis added) which the petitioner has taken to secure relief from his conviction, as being broad enough to include previous habeas corpus proceedings, even after the repeal of the right to review in this Court. While there is wide conflict of opinion nationally, it is the prevailing view that the doctrine of *res judicata* is inapplicable in habeas proceedings; see 25 Am. Jur. *Habeas Corpus,* Section 156; 161 A.L.R. 1341; 165 A.L.R. 932; 38 A.L.R. 2d 1440; anno. 92 L. ed. 1391. However, the extent to which the judge in the exercise

of sound judicial discretion, may rely on a prior determination, if at all, where repeated applications state the same grounds for relief (and abuse of the writ shown), is far from clear. If the case at bar had been a petition for a writ of habeas corpus, the court below, in its discretion, could deny the writ under Rule Z 44, if "the legality of the confinement was determined upon a prior application for the writ * * * and *no new ground is shown* * * *." (Emphasis added). The precise connection between final adjudications under the two forms of collateral relief, and the effect of a habeas corpus determination upon a later, original Post-Conviction petition, in the light of the purposes of the Act and in view of the abrogation of the right to appeal in habeas cases, have not been considered by this Court.

We leave the question open. Even if we assume, without deciding, that a Post-Conviction court cannot rely upon a prior habeas corpus decision to any extent whatsoever, it is apparent in this case that an independent examination of the allegations raised in this petition would disclose no grounds for relief. Those allegations are:

1. That petitioner did not have proper representation at his trial. Four additional statements are made to lend credence to this claim: (a) that the two, privately retained attorneys failed to question witnesses about their criminal records; (b) that petitioner was not advised of the existence of a right to appeal; (c) that his attorneys "went out [sic] the courthouse and left me at the bar there"; (d) that "* * * a lady gave them a note in the courthouse telling, stating that she had seen the fellow who waited for me and attacked me, because of this incident. They refused to present that to the court."

The first statement does not go to due process, but rather to trial tactics which, in *Slater v. Warden,* 233 Md. 609, 611 (1963), we held were not reviewable in a collateral proceeding. The second statement is irrelevant; for, regardless of the duty of counsel to advise his client of the right to appeal (*Cooper v. Warden,* 225 Md. 630 (1961)), it is a matter of record that Hines was in fact afforded a delayed appeal. (*Hines v. State, supra.*) The third statement is virtually meaningless. The fourth is equally devoid of merit, for it is not asserted nor shown that Hines knew anything about the mysterious lady, or

the note or its contents; he admitted that he did not ask counsel to put this person on the stand; and he did not raise this "issue" on direct appeal.

2. That Art. XV, sec. 5 of the Maryland Constitution and Code (1964 Supp.), Art. 27, sec. 593, allowing the jury to judge the law as well as the facts, are unconstitutional. This claim was not presented on direct appeal; furthermore, *Giles v. State*, 229 Md. 370 (1962), is dispositive of the matter.

3. That colored citizens were not placed on the grand and petit juries in proportion to their relation to the population as a whole. This issue was also decided conclusively in the *Giles* case, *supra*, at pp. 377-78.

4. That Judge Tucker played "a large part" in prejudicing the jury against him. This bald allegation, unsubstantiated in the hearing below, lacks any specificity and is too general to merit scrutiny by this Court.

5, 6, 7. That "they" suppressed evidence of a potential witness; that the opinion of the Court of Appeals in Hines' direct appeal was "based on perjury"; and that each of the State's five witnesses committed perjury.

Before oral argument in *Hines v. State, supra,* this Court received several letters from petitioner stating that he was dissatisfied with the attorney appointed to represent him on appeal, because the attorney planned to argue only the sufficiency of the evidence, and not the allegedly knowing use of perjured testimony by the State or the alleged suppression by the State of material evidence tending to exculpate him. In view of these letters we permitted Hines to submit his own memorandum raising these questions. As the reported opinion shows, page 252, these matters were given careful consideration and were decided against him.

8. That Mr. Kimmelman, court-appointed counsel before the Court of Appeals, was guilty of "bad conduct," in that he refused to point out pertinent testimony of the State's five witnesses, and that he refused to let petitioner study the trial transcript.

9. That the prosecutor "put lies in" the record extract and appellate brief "that was hurtful to me. I felt that the Court of Appeals went along with * * * what he said."

10. That the Court of Appeals refused to discharge Mr.

Kimmelman, even after protest, and insisted that he represent Hines.

11. That he didn't get to "face the lawyer" and argue orally *pro se* in the Court of Appeals.

As to #8, it is obvious from what has already been said that this Court did consider the various perjury charges made by Hines on appeal; also, we found that "his counsel on appeal went over the transcript with Hines to determine what points should be made" (p. 252). #9 amounts to no more than that the Attorney General relied upon the testimony produced by the witnesses called for the State, testimony alleged to be false but found not to be so. As to #10, while this Court did not "dismiss" or "discharge" appellate counsel as requested, it nevertheless heard and carefully considered applicant's own supplemental memorandum. The eleventh contention is patently devoid of merit as a ground for collateral relief. By the adoption of Maryland Rule 775 we have decided that the personal attendance of the prisoner at the oral argument of his appeal is unnecessary; see *Olewiler v. Brady,* 185 Md. 341, 349, and *Plump v. Warden,* 220 Md. 662, 664, citing *Schwab v. Berggren,* 143 U. S. 442, 450. We have further provided that all action on his behalf may be performed by his counsel. Rule 890.

*Application denied.*