## VENEY *v.* WARDEN, MARYLAND PENITENTIARY

[App. No. 2, September Term, 1970.]

*Decided November 9, 1970.*

Before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

PER CURIAM.

The petitioner, Samuel Veney, was convicted by a jury in the Circuit Court for Frederick County of murder in the first degree and on May 16, 1966, was sentenced by that court to death by the administration of lethal gas. We affirmed the judgment on October 15, 1968, in *Veney v. State,* 251 Md. 182, 246 A. 2d 568. The Supreme Court of the United States denied certiorari on April 1, 1969. *Veney v. Maryland,* 394 U. S. 948, 89 S. Ct. 1284, 22 L.Ed.2d 482.

The petitioner on April 24, 1969, filed a petition for relief under the Post Conviction Procedure Act, Code (1957), Art. 27, § 645 A *et seq.,* and later filed a supplemental petition on July 9, 1969. The Honorable John P. Moore, one of the judges of the Circuit Court for Mont-

gomery County, was assigned that case pursuant to Maryland Rule 1202 b 1 and on November 14, 1969, held a hearing at which time the petitioner was represented by counsel, William R. Leckemby, Jr. Judge Moore considered eleven grounds for post conviction relief raised in a combination of the first petition of April 26, 1969, the supplemental petition of July 9, 1969, and a ground raised at the hearing. Judge Moore in a comprehensive and well reasoned Memorandum Opinion, filed February 24, 1970, carefully considered these eleven grounds and concluded that there was no ground upon which to grant post conviction relief. Accordingly he passed an order dated February 20 and filed on February 24, 1970, denying the petition. The petitioner, pursuant to Art. 27, § 645-I and Maryland Rule BK46 has applied to this Court for leave to appeal.

We have carefully considered the grounds for relief asserted by the petitioner and, for the reasons set forth in Judge Moore's Memorandum Opinion and Order, have concluded that leave to appeal should be denied. We direct the reporter to print as an appendix to this opinion Judge Moore's Memorandum Opinion and Order filed February 24, 1970.

*Application denied.*


## APPENDIX

### IN THE CIRCUIT COURT FOR FREDERICK COUNTY, MARYLAND

| SAMUEL VENEY | : | Miscellaneous Petition No. |
|---|---|---|
| VS. | : | 3748 |
| STATE OF MARYLAND | : | |

### *MEMORANDUM OPINION AND ORDER*

This is a petition for post conviction relief from a first degree murder conviction by a jury in Frederick County. The indictment against the petitioner was filed on Novem-

ber 26, 1967, in the Circuit Court for Baltimore City. The case was removed to Frederick County pursuant to his request for removal. A further motion for removal was denied on March 29, 1966, and the petitioner was convicted by a jury in the Circuit Court for Frederick County after a five day trial from April 11 to April 15, 1966 before Judge Dudley Digges, then Chief Judge of the Seventh Judicial Circuit (now Associate Judge of the Court of Appeals) and Judge Robert E. Clapp, Jr. On May 16, 1966 the Court sentenced the petitioner to death by the administration of lethal gas. The defendant appealed and the Court of Appeals affirmed the judgment unanimously on October 15, 1968. 251 Md. 182, 246 A. 2d 568.

The instant petition for post conviction relief was filed with the Circuit Court for Frederick County on July 9, 1969. The matter was assigned to this member of the Circuit Court for Montgomery County pursuant to Maryland Rule 1202 B, and a hearing on the petition was held in the Circuit Court for Frederick County on November 14, 1969.

The underlying facts in the case were summarized by the Court of Appeals as follows:

"At approximately 9:40 P. M. on December 24, 1964, Luxie's Liquor Store at 2002 Greenmount Avenue in Baltimore City was robbed. Several men were involved. Appellant was identified as one of those men. Lt. Maskell of the Baltimore City Police Department arrived on the scene, accosted appellant, and was in the process of taking him into custody when one of the robbers shot Lt. Maskell. Lt. Maskell was shot a second time. Appellant was identified as firing the second shot. Lt. Maskell was not fatally wounded. The culprits escaped. Between 10:00 and 11:00 P. M. appellant and others alleged to have been involved were at the home of appellant's sister. Discussion of the incident took place. Appellant stated, 'I think I shot him, too.'

> Sgt. Jack Cooper was one of those searching for the participants in the robbery and shooting of Lt. Maskell. Sgt. Cooper was seen at approximately 4:20 A. M. on December 25 by fellow officers. A few minutes later shots were heard from the direction in which Sgt. Cooper had gone. He was found fatally wounded near his police car, lying across an alley, face down, in an unconscious condition. The dome light of his car was on. The driver's door was open. The microphone of the radio was lying on the front seat.
>
> The motor vehicle operator's license of appellant was picked up from the floor of the police car. Just outside the car on the driver's side under the open door were found the Social Security card, Selective Service card and birth certificate of appellant, together with a number of other papers connected with appellant." 251 Md. at 185, 246 A. 2d at 570.

Other important facts are that a verbal admission of shooting a police officer was overheard by a witness who identified the speaker's voice as that of the petitioner; that the petitioner had been seen with a gun before and after the Cooper shooting; and lastly that his gun had been identified as the gun that had fatally wounded Sgt. Cooper and had wounded Lt. Maskell.

The petition of Samuel Veney of April 26, 1969, and his supplemental petition filed July 9, 1969, raise ten distinct grounds for post conviction relief, and an eleventh was raised at the hearing of November 14, 1969:

> 1. That petitioner was denied due process of law when the jury was allowed to separate before the verdict.
>
> 2. That the petitioner, a male, is the victim of unconstitutional sex discrimination since the state for nearly thirty years allegedly has not sought the death penalty in the case of any female accused of crime.

3. That the petitioner was the victim of an attempted unlawful arrest.

4. That his conviction was based on insufficient evidence.

5. That the denial of a change of venue from the Circuit Court for Frederick County was wrongful in light of the publicity which surrounded not only his trial but also the earlier trial in Frederick of his brother, Earl.

6. That the petitioner was denied his right to a speedy trial and held incommunicado without counsel.

7. That the petitioner was prejudiced by the introduction of testimony allegedly inadmissible because it (a) consisted of an unreliable voice identification, and (b) was allegedly coerced from the witness under threat of criminal prosecution.

8. That the petitioner's counsel failed to subpoena a defense witness whom petitioner wished to have testify on his behalf.

9. That petitioner was denied due process because the trial court allegedly refused to allow petitioner's counsel to poll the jury following the reception of the jury's verdict.

10. That the petitioner was the victim of a prejudicial in-court characterization by the state's attorney.

11. That the petitioner was denied his right to present his own defense because he was not present at a conference in Chambers prior to the trial at which the ground rules for the conduct of the trial were established.

While contentions numbered seven, eight and ten merit more than routine consideration, it is the first point, the allegedly improper separation of the jury, that the petitioner most strenuously urged upon the Court. The jury was permitted to separate each day during the four day

trial at the luncheon, dinner and overnight recesses, but was not allowed to do so after the case had been submitted to them for their deliberation upon a verdict. The case is therefore clearly within the scope of Maryland Code, Article 51, Section 22 (Supp. 1969), which provides:

> "The jurors sworn to try a criminal action may, at any time before the submission of the case to the jury, in the discretion of the court, be permitted to separate or may be kept in charge of proper officers."

The petitioner recognizes the applicability of this provision, but claims that the trial court abused its discretion in permitting the jury to separate in the face of allegedly harmful publicity to which the jurors in Frederick were claimed to be exposed during the periods of their separation. The petitioner makes no attempt to demonstrate actual prejudice in his case, but argues that prejudice must be presumed from the jurors' exposure to stories and reports concerning the petitioner's trial.

The Court finds no merit in this contention. In light of the discretion reposed in trial courts by Maryland Code, Article 51, Section 22, there can be no presumption that separation prior to the submission of the case to the jury has prejudiced the rights of the person standing trial. As the Court of Appeals stated in *Midgett v. State,* 223 Md. 282, 295-96, 164 A. 2d 526 (1960), *cert. denied,* 365 U. S. 853 (1961), "the separation of the jury is permissible, in the discretion of the trial court, prior to submission, and . . . prejudice is not to be presumed from such separation simply because of the possibility of influence or contamination through outside contacts." *Accord, LaGuardia v. State,* 190 Md. 450, 58 A. 2d 913 (1948). As pointed out in a thorough annotation entitled "Separation of jury in criminal case," in 21 A.L.R.2d 1088, 1117, supplementing 34 A.L.R. 1115 and 79 A.L.R. 821, "it is regarded as settled" that where separation is within the discretion of the trial court, no prejudice can be presumed if the jury is allowed to separate.

Our refusal to make an assumption of prejudice in this case is buttressed by two additional considerations: first, as reflected in a joint stipulation made at the hearing on this petition, the petitioner's counsel explicitly advised the trial court outside the jury's presence that there would be no request that the jury be sequestered during the trial; secondly the trial court prior to each separation very carefully admonished the jury against discussing or reading about the case. The courts in this State have adhered to the rule that there shall be no presumption of prejudice even where these additional factors were not present. In *Graef v. State*, 1 Md. App. 161, 170, 228 A. 2d 480 (1967), for example, the defendant's trial counsel strenuously objected to the separation of the jury. The Court of Special Appeals nevertheless affirmed the rule that prejudice must be demonstrated and is not to be assumed merely from the fact of separation where there is a possibility of influence or contamination from outside contact. On the other hand, where trial counsel does consent to separation, it is especially clear that the defendant has the burden of showing prejudice. In *Near v. Commonwealth*, 202 Va. 20, 116 S.E.2d 85 (1960), for example, the defendant in a murder prosecution consented to separation, and the court accordingly held that there could be no presumption of prejudice and that the defendant would have the burden of showing actual harm. An analogous rule prevails in federal courts, where a defendant's right to have a jury kept together may be waived or lost due to failure to object to the jury's separation. *Stern v. United States*, 219 F. 2d 263 (4th Cir. 1955).

Maryland Code, Article 51, Section 22 does not explicitly require that the trial court admonish the jury to observe silence and avoid outside contacts at each separation during the trial, and the Court of Appeals has adhered to the requirement that the defendant demonstrate prejudice even where the trial court at several recesses has failed to give an appropriate caution or admonition. *E.g., Midgett v. State*, 223 Md. 282, 164 A. 2d 526 (1960), *cert. denied*, 365 U. S. 853 (1961). In the instant case, as

444

indicated above, the trial court at each separation gave thorough and painstaking admonitions to the jury. At the conclusion of the first day's session, during which the court and counsel participated in the selection of a jury, the court admonished the jury as follows:

"Members of the jury, we are going to stop now for the day. We have two alternate jurors to be selected tomorrow. We ask that you meticulously follow the following instructions that we are going to give you. You are not to talk to anyone about the case. By that I mean your families, or anyone else. You are to talk to no one. You are to allow no one to talk to you about it. You are not to get close enough to anyone that might be discussing it. You are not to read any newspaper accounts whatsoever. You are not to watch any accounts that may appear on television nor are you to listen to any radio accounts concerning this. When I say that, I mean in the very broad sense, whether it happens to be the local newspaper, the local radio station, or from any other source, such as Baltimore or Washington newspapers or television accounts or from any source. You are not to talk to anyone about or allow anyone to talk to you about it or are you to get close enough to anyone that might be discussing it. You are to read no accounts or listen to any accounts nor to view any accounts. If you will follow these instructions meticulously—and when I say not to talk to anyone, I want to impress upon you not to discuss it with members of your family — with your wives or husbands or children or anyone whatsoever. That would encompass all that. And we will begin tomorrow morning at 9:30. When you arrive tomorrow morning or whenever you do arrive, if it is early or what, go immediately to the jury room and do not remain in the corri-

dors or downstairs. When you come on the courthouse grounds, go immediately to the jury room and wait until we send for you.

Mr. State's Attorney, any further instructions you want to give?

ROTHENHOEFER (State's Attorney) : Nothing further, Your Honor.

COURT: Mr. Hargrove?

HARGROVE (Defense Counsel): Nothing further, Your Honor." (Tr. at 116)

Throughout the trial similar admonitions were given to the jury. (See, *e.g.*, Tr. 166, 221, 275-76, 324-25, 409, 427, 476, 513, 544-45). Where such admonitions are given, courts in Maryland insist on a showing of prejudice even where the counsel for the defendant can demonstrate to the court that newspaper accounts which could be prejudicial to the defendant's case are in circulation. In *Graef v. State*, 1 Md. App. 161, 228 A. 2d 480 (1967), for example, the Court noted, after citing an admonition similar to that given in the instant case, that the defendant had made no showing that the articles were actually prejudicial, nor that any of the jurors had read such articles, nor lastly that these articles or any other publications had had any influence upon any single juror. The same is true in the instant case. We therefore conclude that the jurors adhered to the stern admonition given by the trial court and that consequently the defendant suffered no prejudice on account of the jury's separation in the course of trial.

Even if we were permitted under the applicable Maryland law to infer prejudice from the fact of separation in a widely publicized capital case, such an inference would not be appropriate on the basis of the record before us. Unlike the publicity which surrounded the trial in *Sheppard v. Maxwell*, 384 U. S. 333 (1966), a case strongly relied on by the petitioner, the publicity in the instant case did not include prejudicial matter which had not been introduced into evidence. In the *Sheppard* case on the

other hand, many of the stories in the five volumes of clippings regarding the case involved matters which the prosecution made available to both local and national news media without securing their admission into evidence. The *Sheppard* case is further distinguishable in that the trial judge in that case allowed the press to inject a carnival or circus atmosphere into the court proceedings. A press table running the entire width of the courtroom was set up inside the bar. Members of the press, radio and televison were allowed to congregate in unlimited numbers and were completely unrestrained in their news gathering activities. The jurors in that case were given woefully inadequate directions on their conduct during recesses — directions which were advisory rather than mandatory in tone, and which were so lightly treated by the jurors that they granted members of the press corps expansive interviews disclosing the testimony that had been heard by them in the course of the trial. The trial in the case of *Marshall v. United States,* 360 U. S. 310 (1959), also cited by petitioner, was marked by similar abuse. Highly prejudicial matters, ruled inadmissible at trial, were published in the press, and the record disclosed that the jurors had read them.

The instant case is far different. The decision to allow the jury to separate came only after the Court, having already carefully considered a pre-trial motion for removal from Frederick County, took great pains on voir dire examination to evaluate the nature of the publicity that had surrounded and was likely to surround the petitioner's trial, and satisfied itself that the jurors eventually chosen were not those who would form an opinion regarding the guilt or innocence of the accused on the basis of newspaper or other reports. Even if the jurors in the instant case did not strictly adhere to the Court's admonitions against reading or hearing about the case in which they were sitting, there is no basis for inferring that the jurors were exposed to severely prejudicial materials. At the hearing on this petition, counsel for the petitioner introduced several pages of articles dealing

with one or more aspects of the case against the peti-
tioner. Only six of the articles were published during the
time that the jury was hearing the case. None of these
contained material which was not admitted at trial; nor,
in the Court's judgment, did they exaggerate or distort
the testimony introduced against the petitioner by the
witnesses for the State. The petitioner has consistently
claimed that he was prejudiced by the adverse publicity
surrounding his brother's earlier trial for crimes for
which the petitioner was also indicted, but none of the
articles published during the trial made more than a pass-
ing reference to Earl Veney's case. In sum, regardless of
where the burden lies on the issue of separation, we would
be inclined on the basis of the articles tendered by the
petitioner to conclude that prejudice was unlikely to ac-
crue from the publicity which surrounded his trial.

The petitioner raises two grounds in support of his con-
tention, listed as item seven above, that he was unduly
prejudiced by the introduction of the testimony of Fran-
ces Mitchell, a critical prosecution witness in this case.
The Court's threshold reaction to this contention is that
the admissibility of a witness' testimony, except where
there is a claim that the testimony is perjured, is not a
ground that may be raised in a post conviction proceed-
ing since it is available on appeal. The petitioner in his
appeal raised two distinct arguments regarding the in-
troduction of certain evidence against him. He did not at
that time raise any objection to the admission of the tes-
timony of Mrs. Mitchell. Under Maryland Code, Article
27, Section 645A (c), an allegation of error "shall be
deemed to be waived when a petitioner could have made,
but intelligently and knowingly failed to make, such al-
legation before trial, at trial (or) on direct appeal. . . ,
unless the failure to make such allegation shall be excused
because of special circumstances." The burden of proving
special circumstances is explicitly placed upon the peti-
tioner under this subsection, and we note that the peti-
tioner has offered no rationale for his failure on appeal
to raise his objections to the introduction of Mrs. Mitch-

ell's testimony. In this regard see and compare *Smith v. Warden,* 4 Md. App. 550, 243 A. 2d 897, *cert. denied,* 393 U. S. 989 (1968), where the Court of Appeals declined to allow a petitioner to object to the use of illegally obtained evidence since such objection could have been raised on appeal.

Even if it were reviewable on its merits, the petitioner's contention regarding the admission of Mrs. Mitchell's testimony is clearly insubstantial. He first argues that her testimony should not have been admitted because it was made under threat of a twenty year term of imprisonment if she failed to testify (See tr. 241). Petitioner does not claim that the coercion against Mrs. Mitchell resulted in her giving perjured testimony. Compare *Clark v. Warden,* 293 F. 2d 479 (4th Cir. 1961), *cert. denied,* 369 U. S. 877 (1962). The Fifth Amendment offers protection against compelled self-incrimination, but there is no constitutional guarantee against the introduction of testimony given by another person under the threat of criminal prosecution. Indeed, the doctrine of immunity rests upon the belief that the state may use the promise of withholding criminal prosecution as an inducement to testify against another. And every witness is compelled to testify in the sense that he can be punished for contempt of court unless able to invoke the Fifth Amendment. 17 Am.Jur.2d, Contempt § 29; *compare* the stern language of Maryland Code, Article 35, Section 16, *repealed,* 1962 Acts of Assembly, Chapter 36, Section 1, wherein a mandatory jail sentence was imposed for the failure of a witness in court to give evidence. Where testimony is not freely given, its probity is subject to evaluation by the trier of fact, but is certainly not reviewable on a post conviction proceeding. See generally *Meadows v. Warden,* 243 Md. 710, 222 A. 2d 249 (1966) ; 7A MLE, Criminal Law § 866.

The second objection to the introduction of Mrs. Mitchell's testimony is that it contained an allegedly unreliable voice identification which was highly prejudicial to the petitioner. The testimony in question concerns the au-

thorship of an incriminating statement made by one of several persons entering the house of Eloise Bennett, wherein Mrs. Mitchell and Earl Veney, among others, had been sleeping on the evening of December 25, 1964. The transcript of the testimony reads as follows:

Q Did you stay with Earl after you got to Eloise Bennett's house?
A Yes.
Q And how long were you in his presence?
A All the time until daybreak.
Q Until daybreak?
A Yes.
Q You know about what time it was you left Earl's presence?
A It was about seven or eight.

. . .

Q Did you see at anytime when you were in Earl's presence that night, did you ever see him shoot a gun?
A No, not Earl.
Q Now, after you and Earl and Ruth Wilson left Sam down at Annie Brown's house, did you at anytime later that night or the next morning see or hear Sam again?
A Later that night I heard some people come in. But I don't know who came in first.
Q No, I asked you, did you, yourself, with your own ears and eyes ever see or hear Sam again that morning?
A Well, I didn't see him.
Q Did you hear him?
A I believe I heard him.
Q Do you know his voice?
A Yes, I believe I could tell it.
Q Where was it you heard it?
A It was as I was leaving.
Q As you were leaving where?
A As I was leaving Eloise's room for my home.

Q As you were leaving Eloise's. And what time was it?

A About seven or eight.

Q About seven or eight in the morning. And what did you hear Sam say?

. . .

Q What did you hear Sam say?

A I believe I heard him say he had to shoot him.

Q What were his words?

A That he had to shoot him. I never heard him say who or what.

Q Did he say why?

A No, I heard him say something about an ID card.

Q An ID card?

A But I never seen him or he never said it in my presence that he had shot anybody. Neither one ever admitted it.

Q But they were the words you heard?

A Yes.

Petitioner claims that this was an improper identification, but it appears to the Court that this question is one going to the adequacy or sufficiency of the evidence and hence is not reviewable in a post conviction proceeding. Rather, this contention is governed by the numerous cases in which the Court of Appeals has explicitly stated that the identification of the petitioner is not subject to reconsideration in a petition for post conviction relief. *E.g., Washington v. Warden*, 222 Md. 624, 161 A. 2d 121 (1960).

An eighth contention raised by the petitioner is that his counsel failed to summon a witness whom the petitioner desired to testify in his behalf. The Clerk of the Circuit Court for Frederick County stated upon inquiry by the Court at the hearing on this petition that the witness in question, a Mr. Marvin, was not summoned nor was a summons requested. The Court concludes, however, that this contention must fail on its face since a failure to call

witnesses will only constitute a ground for post conviction relief where the petitioner produces the alleged witnesses in support of his claim that the denial was prejudicial to his right to a fair trial. *White v. Warden,* 1 Md. App. 670, 232 A. 2d 821 (1967). In the instant case the petitioner has not produced the witness to substantiate the claim that such witness was essential to a fair trial. Moreover, his proffer of what Mr. Marvin would have testified does not persuade the Court that the availability of the witness would have materially promoted the defendant's case. According to the petitioner's testimony at the hearing on this matter, Mr. Marvin would state that the petitioner and his brother, Earl Veney, possessed identical guns. Petitioner infers that it would be impossible to identify the petitioner's gun as the one from which the shot killing Sergeant Cooper was fired. Even if it could be established that the two brothers owned the same make and model of firearm, the petitioner has not given us reason to believe that guns of similar or identical make are not distinguishable by a ballistics expert. The petitioner has not, in other words, met his burden of showing that the absence of the witness in question was actually prejudicial to his right to a fair trial. In this regard it is notable that the ballistics expert testifying on behalf of the State positively identified petitioner's gun as that which fatally wounded Sergeant Cooper and had wounded another officer, Lieutenant Maskell.

Petitioner's tenth contention is that he was unfairly prejudiced by a remark made by the State's Attorney of Baltimore City, characterizing him as one of the most famous brothers in American history since the James boys. We find that this contention is completely without merit. The challenged remark was made at a pre-trial hearing on the petitioner's motion to remove the case from Frederick County. The remark was reported in the local press, and was thus part of the publicity attending the trial. However the prejudicial nature of the publicity before or about the time of the petitioner's trial was thoroughly considered by the Court of Appeals. It concluded

that the publicity was not of such a nature as to require the removal of the case from Frederick County in order to afford the petitioner a fair trial. Besides being generally adjudicated in final fashion by the Court of Appeals, the substance of this contention of the petitioner was given most thorough scrutiny by the trial court in their examination on voir dire of each juror. The trial court took great care that the remark would not work to the prejudice of the petitioner. Furthermore, in light of the Court's frequent insistence that the jury limit their attention to matters introduced at trial and exclude all outside materials of whatever kind, the State's Attorney's pre-trial remark did not amount to a denial of the petitioner's right to a fair trial.

Four additional grounds raised by petitioner, numbered above as items three, four, five and eleven, are clearly beyond the scope of post conviction relief. Regarding item three, it is noteworthy that the petitioner does not assert that his arrest in New York at a Long Island zipper factory on March 11, 1966 was illegal or without probable cause, since his claim is that he was the object of an *attempted* rather than an actual unlawful arrest. Such alleged attempt presumably came in the wake of the various theft crimes and the assault with intent to murder for which the petitioner and others were subsequently indicted, but petitioner's contention in this regard offers no ground for post conviction relief because it is devoid of any supporting factual allegations. The Court is left to guess at what he means; his claim is accordingly deficient. See *Wilmer v. Warden,* 244 Md. 718, 224 A. 2d 106 (1966). In addition, it is well settled that an illegal arrest is of no avail in a post conviction proceeding unless illegally seized fruits of that arrest are offered in evidence against the defendant at trial. *E.g., Jackson v. Warden,* 235 Md. 689, 202 A. 2d 757 (1964); *Knox v. Director,* 1 Md. App. 678, 232 A. 2d 824 (1967). Assuming that the attempted illegal arrest complained of was the incident giving rise to the petitioner's killing of Sgt. Cooper, there was no evidence "come at by exploi-

tation of that illegality" such as would enable this Court to invoke the protective rule of *Wong Sun v. United States,* 371 U. S. 471 (1963). At least as respects the prosecution for the murder of Cooper the finding of the petitioner's identification cards near the body was patently fortuitous rather than the result of a conscious police effort to exploit the alleged illegality of Cooper's initial detention of the petitioner. Lastly, there is no reason offered for petitioner's failure to raise this contention on appeal, and we accordingly find that it has been waived. *See Hines v. Warden,* 236 Md. 406, 204 A. 2d 176 (1964).

Petitioner's contentions regarding the sufficiency of the evidence and change of venue were thoroughly considered in the Court of Appeals opinion of Judge Smith, 251 Md. 182, 246 A. 2d 568 (1968). We are therefore precluded from considering them on a petition for post conviction relief. Maryland Code, Article 27, Section 645A (a), (b). Of course, under no circumstances could such relief be based on the alleged insufficiency of the evidence at trial. See *Boucher v. Warden,* 5 Md. App. 51, 245 A. 2d 420 (1968) ; *Williams v. Director,* 4 Md. App. 721, 245 A. 2d 105 (1968).

Petitioner's eleventh point, raised solely at the hearing on this petition, is that he was denied his right to be present at a pre-trial meeting at which the court and counsel reached agreement regarding certain procedures to be followed at trial. This allegation affords no basis for relief because no law, federal or state, provides that the right to be present at trial extends to conferences between the judge and counsel in chambers. *Martin v. State,* 228 Md. 311, 179 A. 2d 865 (1962) (arguments of law) ; see *Brown v. Pepersack,* 217 F. Supp. 547 (D. Md. 1963), aff'd., 334 F. 2d 9 (4th Cir.), *cert. denied,* 379 U. S. 917 (1964) ; *Brown v. State,* 225 Md. 349, 170 A. 2d 300 (1961), *cert. denied,* 372 U. S. 960 (both dealing with consideration of jury instructions). Nor does such right apply to matters which are purely preliminary in nature. *People v. Isby,* 30 Cal. 2d 879, 186 P. 2d 405, 414 (1947). In the instant case, petitioner does not claim prejudice

from any matter considered in the pre-trial meeting except the agreement to allow the jury to separate during trial. As already noted above, this matter is discretionary with the Court and under the facts in this case did not go the fairness of the petitioner's trial. Consequently, petitioner's absence from the session at which the agreement regarding separation was reached is not of constitutional dimensions. See *Snyder v. Massachusetts*, 291 U. S. 97 (1934).

Of the remaining grounds asserted by petitioner, two have been withdrawn and one is frivolous. Denial of speedy trial and assistance of counsel, and alleged refusal of the trial court to allow counsel to poll the jury, items 6 and 9 respectively, were explicitly withdrawn by the petitioner at the hearing on this petition. Petitioner's counsel concurred in this withdrawal, and we are convinced that it was made in an intelligent and knowing fashion. Besides being waived, these two grounds are clearly without any support in the record before us. Petitioner has not specified the time during which he was allegedly held without counsel. Nor was any incriminating statement made in the course of custodial interrogation sought to be introduced against him. With respect to the promptness of petitioner's trial, the record shows that he was indicted on November 26, 1965 and was brought to trial on April 11, 1966. This period of delay was occasioned by the petitioner's own defense tactics, and in any event is clearly insubstantial. *Compare Keyes v. State*, 236 Md. 74, 202 A. 2d 582 (1964) ; *Stevenson v. State*, 4 Md. App. 1, 241 A. 2d 174 (1968). The Court also notes that this is not a case in which the petitioner was denied his right to poll the jury. Following the reception of the verdict at 11 :55 P. M. on April 16, 1966, the trial court inquired of defense counsel whether he wished to have the jury polled. Counsel responded, "Yes, Your Honor, we so request," and the transcript shows that at that point the jury was polled by the Court without objection. (Tr. 560-61).

The last contention to be considered is petitioner's

claim that he has been discriminated against by reason of his sex since the State has for nearly thirty years declined to seek the death sentence in cases involving female defendants. It is noteworthy that the petitioner has supplied no factual basis for believing that the death penalty has not been sought during this period with respect to females accused of crimes. Even if this were established, however, the Court is not persuaded that such a practice would be violative of due process or equal protection. The practice is not prescribed by any formal state policy. Maryland Code, Article 27, Section 407, the provision covering first degree murder, is not by its own terms applicable only to males. Nor does the petitioner point to any executive order excluding the application of this section to females. Moreover, there is no indication that a failure of the state's attorneys to seek capital punishment constitutes an abuse of their inherent discretion in the discharge of their prosecutional responsibilities. See 42 Am. Jur., Prosecuting Attorneys § 14, 16.

## *O R D E R*

For the aforegoing reasons, it is by the Court this 20th day of February, 1970

ORDERED, that the Petition of Samuel Veney for Post Conviction Relief be and the same hereby is DENIED.

/s/  John P. Moore
Judge of the Circuit Court
for Frederick County, Maryland

Filed February 24, 1970