William A. COATES, # 128845

v.

STATE OF MARYLAND.

Civ. A. No. B–76–1363.

United States District Court,
D. Maryland.

Aug. 1, 1977.

William A. Coates, pro se.

Gilbert H. Robinette, Asst. Atty. Gen. of Maryland, Baltimore, Md., for respondent.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

William Arthur Coates, currently incarcerated at the Maryland Correctional Institute, filed the instant petition for writ of habeas corpus on August 23, 1976, alleging that he is held in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a) (1970).

Petitioner was charged in two separate indictments with robbery with a deadly weapon and use of a handgun in the commission of a crime of violence in the first indictment, and assault with intent to commit murder and use of a handgun in the commission of a crime of violence in the second. Both indictments arose out of a single transaction in which the proprietor of a store in Baltimore was seriously injured during the perpetration of an armed robbery.

Having been found guilty of the two substantive offenses and the handgun charge related to each, petitioner was sentenced on March 14, 1974 to a total of sixty-five years in the custody of the Commissioner of Correction. More particularly, the sentences were: twenty years on the armed robbery count; fifteen years on the handgun charge arising therefrom; fifteen years for assault with intent to murder; and fifteen years on the handgun charge arising therefrom, with all sentences to run consecutively to each other. (Tr. 293).

Following conviction and sentencing, petitioner perfected an appeal to the Court of Special Appeals of Maryland in which he challenged the sufficiency of the evidence produced at trial to sustain his conviction.

In an unreported *per curiam* opinion, *William Arthur Coates v. State of Maryland*, Number 419, September Term, 1974, filed January 21, 1975, that Court affirmed the judgments of the trial court, finding that the evidence fully supported the conviction. Review by way of certiorari in the Court of Appeals of Maryland was denied on May 23, 1975. *William Arthur Coates v. State of Maryland*, Miscellaneous Docket Number 34, September Term, 1975. On January 7, 1975, during the pendency of petitioner's direct appeal in the Court of Special Appeals, his first action under Maryland's Post Conviction Procedure Act, *Md.Ann.Code* art. 27, §§ 645A through 645J (1976 Repl. Vol.), was dismissed without prejudice due to its prematurity.

After review was denied in the Court of Appeals of Maryland, a second post conviction action was instituted. At that time, petitioner alleged as grounds for relief that his trial counsel was incompetent, that the evidence was insufficient, and that the sentence imposed constituted cruel and unusual punishment. The last contention was based in part on the claim that imposition of sentence for two handgun convictions arising out of a single criminal episode violates the constitutional prohibition against Double Jeopardy.

A hearing was held before Judge J. Harold Grady on June 30, 1975 in which petitioner testified as to his contentions, and his trial counsel also testified. In an Order Denying Relief and Dismissing Petition, Judge Grady reviewed the contentions and testimony and found that trial counsel had adequately investigated the case and had competently represented Mr. Coates at trial. Relief was also denied as to the other contentions raised. Leave to appeal that determination was denied by the Court of Special Appeals of Maryland, *William Arthur Coates v. Warden, Maryland Penitentiary*, Application for Leave to Appeal Number 72, September Term, 1975, filed September 23, 1975.

A third post conviction action was denied without a hearing by Judge James W. Murphy. The contentions raised in this court were raised in the petition before Judge Murphy. It does not appear that any appeal was taken from Judge Murphy's decision. In any event the time for filing a petition for leave to appeal has run. The allegations before Judge Murphy were substantially the same as those raised before Judge Grady, and the respondent has not raised failure to exhaust state remedies as a defense. Inasmuch as there is no merit to any of petitioner's contentions this Court, in order to conserve judicial resources, will address the merits of the instant petition. *See, Nash v. Maryland*, 371 F.Supp. 801, 803 (D.Md.1973).

Petitioner alleges as his grounds for habeas corpus relief the following: (literally transcribed)

(a) I was denied effective and competent assistance by counsel prier to and during trial proceeding.

(b) The State witheld evidence that would have cleared me.

(c) My Sentence of 65 years is a Violation of the Eighth and fourteen  amendments . . . Description of Cruel and unusual Punishment . . .

## I. DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL

As a part of his petition, Mr. Coates asserts the following: (literally transcribed)

C.C. Mr. Coleman [petitioner's trial counsel] was admitted to the preactice of law im 1957 and his practice consists of approximatley 95% criminal trials. Mr. Colrman was told by the petioner that he shot Mr. Blum in selfdefense. Mr. Blum didn't fight the petetioner's case on self defense; Mr. Coleman didn't go to the store to investigate to see where the shots were fired from; he didn't know what the store looked like; I asked Mr. Coleman if they had the gun and he stated that he didn't know. Mr. Coleman came to see me four or five minutes a day before we went to trial. He was not familiar with my case.

The petitioner told Mr. Coleman that he shot in self defense and he didn't try to show in any way that the petitioner shot

in self defense. I told Mr. Coleman to ask Mr. Blum about the fight over the gun and he didn't. MR. Coleman knew that my only way and means of showing self defense and proving it to the jury was having my doctor in court to show how the bullet entered my side, a wound I had to get bt being shot down. Mr. Coleman knew the evidence they had and also knew that they wouldn't take my word that I didn't do it without prevign it for this was not first case by all means.

The foregoing contentions were considered by Judge Grady in his opinion denying petitioner's second petition for post conviction relief. Judge Grady's opinion fully and accurately reflects the facts as developed at the post conviction hearing as follows: (Resp. Ex. 8, pp. 1–3)

In his written petition and in his oral testimony the petitioner's first major contention alleged incompetency of his trial attorney Edward L. Coleman. He stated that Mr. Coleman had interviewed him only one time before his trial for a period of approximately five minutes. He also stated that his trial attorney failed to properly cross-examine state's witnesses. He further stated that Mr. Coleman failed to have a gun expert and a doctor present as witnesses for him at his trial. These contentions are contained in his petition under items 1 through 5. Upon cross-examination he stated that he gave Mr. Coleman the name of no witnesses before his trial because he, the petitioner, was the only witness. He further stated that he did not request a gun expert or a doctor before trial but says that he wrote a letter on this subject to Mr. Coleman after the trial. With reference to cross-examination, he testified that the victim of the robbery and shooting should have been asked questions indicating that the victim and the petitioner were fighting over a gun and that Mr. Coleman failed to ask these questions. The testimony which the petitioner alleges would have been presented by a gun expert and a doctor is set forth in items 3, 4 and 5 of his petition. Such evidence, if sought to be elicited at trial, was clearly inadmissible as beyond the realm of expert testimony since it related to factual issues before the jury, not a proper subject of expert testimony.

Trial counsel Edward L. Coleman testified that he had been assigned the defense of the petitioner through the Office of the Public Defender. For some time preceding the trial the petitioner was confined at the Baltimore City Hospitals. Mr. Coleman stated that he was furnished two investigative notes reflecting two interviews with the petitioner by Public Defender investigators which Mr. Coleman carefully reviewed. He stated that he also conferred with the Public Defender who had represented the petitioner at the District Court concerning the evidence there produced and any line-up which may have been held. He stated that the notes in his file reflected that there were no witnesses to be called. He testified that on February 14, 1974, he had written a letter to the petitioner at the Baltimore City Hospitals enclosing a return self-addressed envelope seeking information from the petitioner. He received no answer to this letter. Mr. Coleman stated that his pre-trial interview with the petitioner consumed approximately forty minutes which he felt was sufficient in view of the previous investigation which had been conducted by the office of the Public Defender. With reference to the petitioner's complaint about lack of cross-examination, Mr. Coleman stated that in his opinion such cross-examination would have been harmful to the petitioner's interest in the presentation of the case to a jury in light of the victim's direct testimony concerning the severe injury he sustained from a gun-shot wound inflicted by the petitioner. The transcript reveals that the petitioner made this contention in his own testimony and that the victim was called in rebuttal to deny the petitioner's version of the offense. Under these circumstances this court concludes that the area of cross-examination proposed by the petitioner was properly rejected by his trial

counsel as a matter of trial tactics and did not constitute a failure of representation. See *Hines v. Warden*, 236 Md. 406, at 409, 204 A.2d 176.

Mr. Coleman was admitted to the practice of law in 1957 and his present practice consists of approximately 95% criminal trials.

After careful consideration this court finds as a fact that the petitioner has failed to establish that his trial attorney's representation of him was inadequate. On the contrary, this court finds as a fact that the petitioner was afforded genuine, effective and competent representation and that he has failed to establish any deficiency in his representation which affected the fairness of his trial.

█ It is clear from the foregoing that Judge Grady accepted the testimony of Mr. Coleman concerning his preparation for petitioner's trial. Petitioner was given a full and fair hearing on this issue and this court accepts Judge Grady's finding of fact on the issue of counsel's preparation for and conduct of the petitioner's trial. *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Trial counsel's actions and decisions of course are not to be assessed in terms of results, foreseen or unforeseen. Mere hindsight quibbling over trial tactics is not a sufficient basis to warrant post conviction or habeas corpus relief.

In assessing whether trial counsel has been ineffective so as to offend due process the Court of Appeals for the Fourth Circuit said:

. . . [I]t is generally held that mere mistakes or errors of counsel are not sufficient to establish a violation of defendant's constitutional right. *It is only in such extreme instances where the representation has been so inadequate as to make a farce of the trial that it can be said that the prisoner was deprived of his constitutional rights.* *Snead v. Smyth*, 273 F.2d 838, 842 (4th Cir. 1959) (emphasis added).

*Bennett v. Maryland*, 425 F.2d 181, 182 (4th Cir. 1970). Petitioner was given the opportunity to and did present his story to the jury; they simply did not believe him.

█ The remainder of petitioner's claims concern the asserted failure of trial counsel to request instruction to the jury regarding the merger of offenses, and the trial court's failure to do so *sua sponte*. The so-called "merger doctrine" relates to those offenses which are lesser included offenses of another offense. Merger, which is closely related to considerations of double jeopardy, requires that all of the elements of the lesser offense be necessarily included in the greater offense, so that the greater offense logically subsumes the lesser. See Discussion III, *infra*.

There is no merit to this contention; petitioner was clearly afforded constitutionally adequate representation at trial.

## II. WITHHOLDING OF EXCULPATORY EVIDENCE BY THE STATE

Petitioner claims that a ballistics expert should have been produced, because "a ballistics expert could testify as to how powerful the gun used was, and that there wasn't any way I could have shot first." In short, petitioner asserts that a shot from his weapon would have delivered a pre-emptive first strike which would have rendered the victim unable to respond.

█ It is clear that this was not evidence in the hands of the state which would be exculpatory to the petitioner. Rather, he assumes that every conceivable explanation of a crime which is inconsistent with a defendant's guilt must be negated by the state. Petitioner misapprehends the nature of the state's burden of proof in a criminal case. The state must prove each element of the crime charged beyond a reasonable doubt. *In Re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). However, that burden does not require that the state exclude every reasonable hypothesis consistent with innocence of the accused, even when the evidence is entirely circumstantial. *See, United States v. Bobo*, 477 F.2d 974, 989 (4th Cir. 1973), *cert. denied*, 421 U.S. 909, 95 S.Ct. 1557, 43 L.Ed.2d 774 (1975). *A fortiori*, such proof would not be

necessary where, as here, there is an abundance of direct testimony as to petitioner's criminal agency.

█ The second facet of this contention concerns the unavailability of an unnamed co-defendant who was not tried with petitioner due to disposition of his case by plea bargain and who, petitioner alleges, would have testified in his behalf. Petitioner did not avail himself of the compulsory process of the court to secure attendance of the witness, nor did he request that any attempt be made to do so. *See, Midgett v. Warden, Maryland State Penitentiary*, 329 F.2d 185, 187 (4th Cir. 1964). Indeed, petitioner testified at his post conviction hearing that he had no witnesses that he wished to call at trial. (PCT. 8).

The rule of *Brady v. Maryland*, 373 U.S. 83, [83 S.Ct. 1194, 10 L.Ed.2d 215], arguably applies in three quite different situations. Each involves the discovery, after trial, of information which had been known to the prosecution but unknown to the defense.

*Agurs v. United States*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976).

Inasmuch as petitioner was clearly aware of the existence of this allegedly exculpatory witness and there is no evidence that the state in any way interfered with his production, it cannot be said that the state withheld any evidence in violation of *Brady*. *See also, United States v. Ruggiero*, 472 F.2d 599, 604 (2d Cir. 1973). Accordingly, there is no merit to this contention.

### III. CRUEL AND UNUSUAL PUNISHMENT

█ Petitioner's contention in this regard is two-fold. First, he complains that the length of his sentence constitutes cruel and unusual punishment. As to this aspect of the argument, ". . . it is well established that sentences within statutory limits present no federal question." *Wright v. Maryland Penitentiary, State of Maryland*, 429 F.2d 1101, 1103 (4th Cir. 1970). Inasmuch as the statutory maximum for each offense was imposed but not exceeded, no federal right of petitioner has been violated.

The second aspect of the contention pertains to whether petitioner was unconstitutionally subjected to trial and punishment twice for the same charge. Petitioner asserts that convictions of two offenses and imposition of maximum sentences for use of a handgun in the commission of a crime of violence is improper because only one handgun was used. While the number of handguns employed is not determinative, petitioner has raised a question as to whether his conviction comports with the Double Jeopardy clause of the Constitution. That provision, made applicable to state prosecutions in *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), has been held by the Court to encompass three related limitations:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. . . . The Court stated the controlling constitutional principle almost 100 years ago, in the landmark case of *Ex Parte Lange*, [85 U.S. 163] 18 Wall. 163, 168, [21 L.Ed. 872]:
>
> > "If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence. And . . there has never been any doubt of [this rule's] entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offence."
> (footnotes omitted).

*North Carolina v. Pearce*, 395 U.S. 711, 717–718, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

█ Thus, it is not only the classic "retrial for the same offense" context to which the double jeopardy clause is applicable. The principle is no less applicable when a state seeks to impose two sentences for a single crime. *See, Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The Court in *Blockburger* enun-

ciated the test by which determination of the number of offenses is governed.

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is *whether each provision requires proof of a fact which the other does not.* Gavieres v. United States, 220 U.S. 338, 342, 31 S.Ct. 421, 55 L.Ed. 489 and authorities cited. (emphasis added).

284 U.S. at 304, 52 S.Ct. at 182. The "same evidence" test continues to state the applicable criterion. *United States v. Garner*, 529 F.2d 962, 971 (6th Cir.), *cert. denied*, 426 U.S. 922, 96 S.Ct. 26, 30, 49 L.Ed.2d 376 (1976). In *Garner*, the Court applied the "same evidence" test to prosecutions under separate indictments for conspiracy to transport stolen securities in interstate commerce, and conspiracy to forge indorsements thereon. Finding that as to each crime a different set of facts need be proved, the convictions, arising out of a single transaction, were affirmed.

The issue now squarely presented in the instant case is whether a Maryland defendant may constitutionally be convicted of two counts of using a handgun in the commission of a felony, in a case arising out of a single transaction, where one victim is involved, but two substantive felonies have been committed.

There is no doubt that petitioner's convictions and consecutive sentences for robbery with a deadly weapon and assault with intent to murder are proper. There are clearly differences in the essential elements of these crimes. The question is whether that difference justifies treatment of the derivative handgun violations as separate crimes.

*Md.Ann.Code* art. 27, § 36B(d) provided in 1974 as follows, in pertinent part:

> Unlawful use of handgun in commission of crime.—Any person who shall use a handgun in the commission of any felony or any crime of violence as defined in § 441 of this article, shall be guilty of a separate misdemeanor and on conviction thereof shall, in addition to any other

sentence imposed by virtue of commission of said felony or misdemeanor, be sentenced to the Maryland Division of Correction for a term of not less than five nor more than fifteen years, and it is mandatory upon the court to impose no less than the minimum sentence of five years.

■ The Court of Special Appeals of Maryland recently considered this problem in *Newton v. State*, 31 Md.App. 344, 356 A.2d 274 (1976), *rev'd on other grounds*, Md., 373 A.2d 262 (1977). In that case, the court upheld the imposition of two convictions for handgun offenses arising out of a murder and armed robbery incident. The statute was construed to mean that each separate felony, which was otherwise properly chargeable, would support a separate § 36B handgun offense. 31 Md.App. at 348–349, 356 A.2d at 277.

This Court agrees inasmuch as, so construed, the statute charges separate crimes consisting of separate elements. The statute generally requires that the state prove two elements:

1) That a felony or crime of violence was committed; and,

2) That a handgun was employed in its perpetration.

In the case at bar, the elements of the handgun offenses are different. For the first indictment they are:

1) That a robbery by use of a deadly weapon was committed; and

2) That a handgun was used in its perpetration.

On the other hand, the second indictment charged:

1) That an assault with intent to murder was committed; and,

2) That a handgun was employed in its perpetration.

Thus, as authoritatively construed by the state courts, it is at once clear that the indictments charge two separate crimes, although there is significant overlap as to one of the two elements. This Court has no doubt that, had the legislature seen fit to delineate separate statutory sections creat-

ing the crimes of "use of a handgun in the commission of an assault with intent to murder" and "use of a handgun in the commission of a robbery" there would have been little pause in arriving at this conclusion. The Constitution compels no different decision where state judicial interpretation has supplied the same result.

Another aspect of the double jeopardy claim merits consideration, although petitioner has not specifically alluded to it. This relates to the imposition of punishment for the separate statutory crimes of robbery with a deadly weapon and the use of a handgun in the commission of a felony. The "same evidence" test continues to be the standard in considering this aspect of the case. Facially, the elements of the two statutory crimes seem very similar. In this case, the underlying robbery must be shown to prove both robbery with a deadly weapon and the handgun offense, and the use of a handgun necessary to proof of the § 36B crime is also the deadly weapon employed to complete the proof of robbery with a deadly weapon. Arguably, the handgun offense may be the same as or a lesser included offense of robbery with a deadly weapon. As the Supreme Court recently observed,

> [a]s is invariably true of a greater and lesser included offense, the lesser offense . . . requires no proof beyond that which is required for conviction of the greater . . . .. The greater offense is therefore by definition the "same" for purposes of double jeopardy as any lesser offense included in it.

*Brown v. Ohio*, —— U.S. ——, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1977). Unlike *Brown*, in which the state courts had authoritatively construed the crimes charged as greater and lesser included offenses, the appellate courts of Maryland have consistently found these not to be greater and lesser included offenses, and upheld cumulative convictions in these circumstances. *Newton v. State, supra; Cates v. State*, 21 Md.App. 363, 320 A.2d 75, *cert. denied*, 272 Md. 739 (1974).

Despite the facial similarity of the crimes charged here, a recent decision of the United States Court of Appeals for the Fourth Circuit, which is in principle indistinguishable from the case at bar, controls this Court's decision. In *United States v. Crew*, 538 F.2d 575 (4th Cir.), *cert. denied*, 429 U.S. 852, 97 S.Ct. 144, 50 L.Ed.2d 127 (1976), the court considered convictions under 18 U.S.C. § 2113(d), for bank robbery by use of a dangerous weapon or device, and 18 U.S.C. § 924(c)(1 and 2), use of a firearm in the commission of a federal felony, and carrying a firearm under the same circumstances. As in the case at bar, the derivative weapons offense merely required proof of a more specific weapon than did the underlying felony. Nevertheless, the Court of Appeals, declining to equate the use of a firearm with the use of a dangerous weapon or device, upheld the convictions for bank robbery by use of a dangerous weapon or device and the use of a firearm in the commission of that felony. The court expressly considered the double jeopardy issue and found that the crimes charged were not identical in law and fact.

The imposition of separate sentences in this case for robbery with a deadly weapon and the use of a handgun in the commission of a felony do not violate double jeopardy principles, and petitioner is entitled to no relief.

By letter dated March 7, 1977, petitioner informed the court of the existence of an unnamed case decided by Judge J. Harold Grady in the Criminal Court of Baltimore, in which Judge Grady retroactively applied the holding in an unnamed 1974 Court of Special Appeals case. This letter, liberally construed, *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam), requests consideration of the alleged erroneous misallocation of a defendant's burden of proof with regard to an alibi.

The short answer to this contention is that no such instruction was ever given by the trial judge as to this defendant, (Tr. 238–264), and by no stretch of the imagination can it be said that an alibi was the theory of his defense. The instructions

relating to alibi were carefully limited to the co-defendants. (Tr. 258–259). Essential to a defense of alibi is the existence of some evidence tending to support a finding that the defendant was not at the scene of the crime at the time of perpetration. *See, United States v. Spoonhunter*, 476 F.2d 1050, 1057 (10th Cir. 1973). In the instant case, the defendant admitted his presence in the victim's business establishment, (Tr. 177), and that he had in fact shot the proprietor. (Tr. 184, 189). The only question was the circumstances of the shooting, not petitioner's presence at the scene.

Accordingly, having fully considered the instant petition, and having found no merit thereto, it is this 1st day of August, 1977, by the United States District Court for the District of Maryland, ORDERED:

1. That the petition of William A. Coates for a writ of habeas corpus be, and the same is hereby, DENIED; and

2. That the Clerk forward copies of this Memorandum and Order to petitioner and to Gilbert H. Robinette, Esq., Assistant Attorney General, counsel for the respondent.