(No. 26219.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HAROLD GLICKMAN, Plaintiff in Error.

*Opinion filed September 17, 1941.*

RAYMOND F. HAYES, (J. GLENN SHEHEE, of counsel,) for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, (EDWARD E. WILSON, JOHN T. GALLAGHER, and MELVIN S. REMBE, of counsel,) for the People.

Mr. JUSTICE FARTHING delivered the opinion of the court:

When tried without a jury in the criminal court of Cook county, Harold Glickman was found guilty of at-

tempted burglary and sentenced for one to five years in the penitentiary. The cause is here upon writ of error.

The indictment contained two counts. The first charged the defendant, on December 23, 1940, did feloniously, burglariously, wilfully, maliciously and forcibly break and enter the dwelling-house of Howard Ivie with intent to steal, etc., the personal property of Howard Ivie. The second count was the same except that it charged the entry was made without force. The indictment did not contain a charge of attempted burglary. It neither alleged the burglary was committed in the nighttime nor in the daytime.

Howard Ivey, (called "Ivie" in the indictment,) the complaining witness, was the manager of an apartment hotel located at 1117 North Dearborn street in Chicago. According to his testimony, he left his apartment on the eighth floor of his hotel about 1:00 o'clock in the afternoon of December 23, 1940. He locked the door when he left, and neither the maids at the hotel nor any other person had a duplicate key. At 6:00 o'clock that evening, when he stepped off the elevator at the eighth floor of the hotel, he said he glanced down the hall towards his room and noticed that his door was open and that light was shining through the doorway. When he left the apartment in the afternoon all the lights were off. He walked toward his room and just as he got to the open doorway he met defendant coming out of the apartment. He also testified that he saw defendant in the living-room of the apartment itself. However, on cross-examination, he said the first time he saw him, defendant was standing in the doorway just coming out of the door. Ivey testified that upon meeting defendant, he asked him what he was doing in his apartment, and Glickman replied he was fixing a faucet in the apartment, having been admitted there by the clerk of the hotel. Ivey then said, "You're crazy. She couldn't let you in. I am the only one who has a key to this apartment." Glickman offered to go downstairs with him and

prove the truth of his story, but Ivey insisted they go into
his apartment and inquire by telephone. He caught de-
fendant by his coat and tore it when the latter made a
break to get away. This coat was not introduced in evi-
dence. Ivey took defendant into his room and called the
clerk. He inquired whether she knew of anyone on the
eighth floor. She said: "Of course not." Ivey told the
clerk to call the police station. She sent Clarence Young,
a bellboy, and Charles Krull, the hotel engineer, to Ivey's
apartment. Ivey also testified he had never given the apart-
ment door key to defendant. He did not testify that any-
thing was disturbed in his apartment or that anything was
taken. Two officers answered the police call. Officer James
Fleming testified that defendant said he found the door to
Ivey's apartment open and that he walked in looking for a
customer to whom he could sell a kinkless telephone cord.
According to the officer, defendant said he did not have a
sample of the cord with him. The People then rested their
case and defendant moved for a directed finding of not
guilty. This motion was overruled and defendant took the
stand in his own behalf. According to his testimony, he
was twenty-three years old and had been in the business
of selling kinkproof cords in offices and apartments for five
years. He entered Ivey's hotel about 5:30 or 5:45 on the
afternoon of December 23, 1940, and took the elevator to
the eighth floor. Upon getting off the elevator, he knocked
on several doors but no one answered. He then knocked
on Ivey's door and it jarred open about six inches. No
one answered and he walked away. He had walked eight
or ten feet when Ivey passed him in the hall. The latter
turned around when he reached his door and asked Glick-
man what he was doing in the apartment. Defendant re-
plied he was not in the room. He told Ivey that he was
selling. He denied that he told Ivey he was in his room
to fix the faucet. Defendant went into Ivey's room at the
latter's request. Ivey said: "So you are the fellow that is

causing me all of the trouble." Ivey then called the police. During all of this time the defendant did not attempt to break away. The police arrived and asked him what he was doing in the apartment and he replied he was selling. He said he showed the officers his business card and the kinkless cord. They took these items from him and never returned them. A card and a cord similar to those claimed to have been taken by the police were introduced in evidence. On cross-examination, defendant testified he and his father operated the Kinkproof Cord Company, and that their office was at 410 Michigan avenue. Five or six other firms shared this office with them, but defendant did not know the names of any of these firms. Defendant reaffirmed his statement that he had shown a sample of the kinkproof cord to Ivey and to Fleming, the police officer. He testified that he carried only a sample cord with him when he sold in apartments because solicitors were not allowed in the buildings. If he did not have a bag, he could get into the buildings and take orders. He would later deliver the cords, and if he was stopped with his bag, he would then say he was just delivering. Defendant testified that on the day he was arrested he had sold twenty cords, nine of which were sold at an apartment building one-half block from the alleged burglary. The People then recalled Ivey who testified that defendant did not give a sample cord to him or to either of the police officers. The bellboy, Young, was then called in rebuttal. Objection was made to his testimony on the ground defendant did not have notice he was going to testify, since his name was not endorsed on the back of the indictment. This objection was overruled on the ground the evidence was in rebuttal. Young testified that when he went into Ivey's room on the date in question he heard defendant pleading with Ivey not to call the police. He also testified he did not see a kinkless cord in the hands of the defendant and that he did not see defendant hand such a cord to the

police officers. On cross-examination, he said he did not know whether the officers took anything from defendant's pockets. The hotel engineer testified he did not see defendant hand a kinkless cord to either of the police officers or to anybody else. On cross-examination he admitted that, from where he was standing in the room, he could not see the various items that defendant took from his pocket and handed to the police officer.

On March 7, 1941, the court found the defendant guilty "generally," and set the hearing on a motion for probation that had been filed, for March 21, 1941. On the later date the court found the defendant guilty of atempted burglary, and sentenced him "for a term of years not less than one nor more than five years as fixed by statute for the crime whereof he stands convicted." Defendant moved for a new trial on the ground, among others, that the evidence was so unreasonable, improbable and unsatisfactory as to justify a reasonable doubt of the defendant's guilt, and because there was a fatal variance between the indictment and the judgment. This motion was overruled and the defendant then filed a motion in arrest of judgment on the ground the indictment was insufficient to support the judgment in that it was not charged therein that the supposed crime was committed in the nighttime. This motion was likewise overruled. The errors alleged in these motions are contained in the defendant's assignment of errors.

The gravamen of the crime of burglary is the felonious intent of the defendant at the time he enters. (*People* v. *Myler,* 374 Ill. 72, 73.) In the *Myler case,* although chickens were stolen, there was no sufficient proof of such an intent on Myler's part when he went into the henhouse. Here, nothing is shown to have been taken or disturbed and the evidence as to Glickman's intent when he entered Ivey's apartment, if he did so before Ivey took him into the apartment, is such that we would hesitate to affirm the judgment and sentence. However, it is not necessary to

decide the case on the point that Glickman was not proved guilty beyond a reasonable doubt.

The indictment in the present case charges burglary as defined in section 36 of division 1 of the Criminal Code (Ill. Rev. Stat. 1939, chap. 38, par. 84) which provides: "Whoever willfully and maliciously and forcibly breaks and enters, or willfully and maliciously, without force (the doors or windows being open), enters into any dwelling house * * * with intent to commit murder, robbery, rape, mayhem, or other felony or larceny shall be deemed guilty of burglary and be imprisoned in the penitentiary for any term of years not less than one year or for life." It will be noted that in order to constitute burglary, as defined by this statute, it is not essential that the crime be committed in the nighttime, as was the case at common law. The defendant in this case was found guilty of attempted burglary, and the People admit the proof shows that whatever Glickman did was done in the nighttime. They say this conviction was under section 1 of division 2 of the Criminal Code. (Ill. Rev. Stat. 1939, chap. 38, par. 581.) That section provides: "Whoever attempts to commit any offense prohibited by law, and does any act towards it but fails, or is intercepted or prevented in its execution, where no express provision is made by law for the punishment of such attempt, shall be punished, when the offense thus attempted is a felony, by imprisonment in the penitentiary not less than one, nor more than five years; in all other cases, by fine not exceeding $300, or by confinement in the county jail not exceeding six months." This section applies only "where no express provision is made by law for the punishment of such attempt." Although the word "burglary" is not mentioned therein, there is such an express provision defining and punishing attempted burglary, and, therefore, the general statute relied on by the People does not apply. That specific section is section 37 of division 1 of the Criminal Code. (Ill. Rev. Stat. 1939,

chap. 38, par. 85.) It provides: "Whoever shall attempt to break and enter in the nighttime any building, ship or vessel, with intent to commit the crime of murder, rape, robbery, larceny or other felony, shall be imprisoned in the penitentiary not less than one nor more than five years." One of the elements of the crime there defined is that the attempt must be made in the nighttime. An indictment or information charging an offense must allege all of the facts necessary to constitute the crime with which the defendant is charged. (*People* v. *Lewis,* 319 Ill. 154.) No indictment is sufficient if it does not accurately and clearly allege all the elements of which the offense is composed. (*People* v. *Trumbley,* 252 Ill. 29; *United States* v. *Cook,* 17 Wall. 168.) The indictment in the case before us does not contain the essential allegation that the attempt for which the defendant was found guilty was committed in the nighttime. Although the criminal court found Glickman guilty of an attempt to commit burglary and sentenced him for from one to five years as "fixed by statute for the crime whereof he stands convicted," this indictment and the proof will not support that judgment.

The People rely on the general rule stated in *People* v. *Lewis,* 375 Ill. 330, and in other cases, that when an indictment for a higher crime embraces all the elements of an offense of an inferior degree, the defendant may be acquitted of the greater crime and convicted of the lesser if the evidence justifies it. Thus, a person may be charged with murder and convicted of manslaughter, (*People* v. *Lewis, supra,*) or charged with rape and convicted of an attempt to commit rape. (See *Reynolds* v. *People,* 83 Ill. 479.) The principle on which these cases depend is that all of the elements of the lesser offense are included within the greater. The crime of murder contains all the elements of manslaughter, and, in addition, the element of malice. But that rule is not applicable here. As we

pointed out above, the statute defining attempted burglary requires the attempt be made in the nighttime. This requirement is not contained in the statute defining burglary. Thus the greater crime, burglary, does not contain all of the elements of the lesser, for the element "in the nighttime" is absent. Since this is true, a defendant cannot be charged with burglary in the language of the statute and be found guilty of attempted burglary as therein defined. This same point was decided in *People* v. *Jones,* 263 Ill. 564, 566, where it is said: "The first count of the indictment is drawn under paragraph 273 of the Criminal Code, and charges plaintiff in error, in proper form, with an attempt to break and enter the dwelling-house of Mrs. Lizzie Brace with intent to steal, take and carry away the goods, chattels, moneys and property then and there in said dwelling-house. Said paragraph 273 provides for the punishment of an attempt to commit any offense prohibited by law where no provision is made by law for the punishment of such attempt. The evidence on the part of the People tended to prove that the plaintiff in error had attempted to break and enter the dwelling-house of Mrs. Lizzie Brace in the nighttime with intent to commit the crime of larceny, the punishment for which is specifically provided for by paragraph 37 of the Criminal Code. This count of the indictment is a good count under paragraph 273 but would not be sufficient to sustain a conviction on proof of a crime the punishment for which is provided for by said paragraph 37."

For the reasons stated, the judgment of the criminal court of Cook county is reversed.

*Judgment reversed.*