GOVERNMENT OF THE VIRGIN ISLANDS.

v.

SONVILLE AUSTIN SMITH, Appellant

No. 76-1522

No. 76-2446

United States Court of Appeals

Third Circuit

Argued April 25, 1977

Filed July 6, 1977

VICTOR G. SCHNEIDER, ESQ., Charlotte Amalie, St. Thomas, V.I., *for appellant*

JULIO A. BRADY, ESQ., U.S. Attorney, St. Thomas, V.I., *for appellee*

Before VAN DUSEN, WEIS and GARTH, *Circuit Judges*

OPINION OF THE COURT

WEIS, *Circuit Judge*

Whether a jury may return a valid verdict on one of two counts in an information after being discharged because of inability to agree on the other is one of the issues raised in these appeals. Another is the contention that the former jeopardy principle barred the defendant's trial on a murder charge when he had already been convicted for possession

43

of a dangerous weapon, the knife used in the killing. We decide these points and others adversely to the defendant and affirm his convictions.

In January, 1976, the defendant Smith became involved in a barroom dispute on the island of St. John, Virgin Islands. He left the bar and, on returning a short time later, challenged a patron named Walsky to come outside and fight. Walsky complied and, in the ensuing struggle, was stabbed to death by Smith.

Smith was arrested for first degree murder and, since he was 17 years of age, was brought before the Juvenile Division of the Territorial Court of the Virgin Islands, pursuant to 4 V.I.C. § 176. After a hearing, at which the defendant was represented by counsel, the judge found probable cause to believe that a crime had occurred involving violence upon the person of another, and that the minor had committed the crime. The defendant was then transferred to the district court for criminal proceedings.

In the district court, a two-count information was filed, charging the defendant with murder in the first degree (later reduced by the Government to second degree), and with carrying or using dangerous weapons.

On February 19, 1976, trial commenced before a jury, and on Saturday, February 21, 1976, the court declared a mistrial because the jurors had been unable to reach a verdict. Within an hour thereafter, the jury foreman telephoned the trial judge and advised him that during their deliberations the jurors had agreed upon a verdict on one count. The jurors were reconvened on the following Monday morning and returned a verdict of guilty on the weapons charge.

A second trial on the murder charge also resulted in jury disagreement, but on the third trial the defendant was found guilty of murder in the second degree.

The defendant has filed two appeals: one from the

dangerous weapon conviction, and the other from the murder count. Since the issues are interrelated, both appeals will be reviewed in this opinion.

## I.

### The Weapons Charge

The principal issue in this appeal is whether the verdict delivered after the jury's discharge is sustainable. A further development of the factual background on this point is helpful.

The jury began its deliberation on Friday afternoon, February 20, 1976, at 3:35 P.M., and continued until 2:30 A.M. the following morning.[1] It resumed deliberations at 10:24 A.M., and at 2:34 P.M. was called into the courtroom by the trial judge. He told the jurors he believed a deadlock had been reached and it would not be fruitful to continue deliberations. The judge concluded by commending them for their efforts. No comments were made by the jurors, who were then dismissed and told to report for further duty on the following Monday morning.

Less than an hour later, the jury foreman telephoned the trial judge and advised him that a verdict had been reached as to Count II (the weapons charge). He said that the verdict slip was in an unsealed envelope in a drawer in the jury room. At the trial judge's direction, a court official then telephoned the foreman who precisely described the location of the verdict slip. After the court employee found two envelopes at the specified place, he delivered them to the trial judge who directed that they be sealed.

On Monday morning, February 23, 1976, the jurors reassembled in the courtroom. In the absence of the trial judge, another district judge presided, and the foregoing facts were entered in the record. The foreman read the

---

[1] This lengthy session was at the suggestion of the jurors.

verdict of guilty and, on the poll, all the jurors agreed with the finding. In response to a question from the presiding judge, the foreman stated that the verdict on Count II had been agreed upon shortly after 10:00 P.M. on Friday evening. At no time did the defendant object to the dismissal of the jury on the preceding Saturday afternoon or its reconvention and return of the verdict on Monday.

An examination of the exhibits in this case reveals a separate verdict slip for Count II, with each juror's signature below the finding.

 The defendant now contends that since the jury had been discharged on Saturday, permitting it to return a verdict on Monday constituted double jeopardy. We conclude that if there was any procedural defect, the defense's failure to object, either before the verdict was announced or immediately thereafter, constituted waiver. Estelle v. Williams, 425 U.S. 501 (1976). Moreover, we hold that absent an objection, the trial judge's decision to declare a mistrial on Saturday afternoon was not reversible error.

At early common law, a jury could not separate before it had rendered a verdict, and the action of the jury here likely would have been declared a nullity. However, much of the rigidity characterizing the common law concept of the jury trial has been relaxed by a more pragmatic approach. As one example, we have held it permissible for jurors to disperse during the period of deliberations. United States v. Piancone, 506 F.2d 748 (3d Cir. 1974) ; Byrne v. Matczak, 254 F.2d (3d Cir.), cert. denied, 358 U.S. 816 (1958).

Earlier case law had shown a tendency to accept some non-prejudicial procedural irregularities. In Humphries v. District of Columbia, 174 U.S. 190 (1889), the Supreme Court decided that a verdict was not a nullity even though only eleven jurors were present when it was read. The twelfth juror, unable to appear because of illness, had his

personal physician deliver the verdict slip to the court. The other eleven jurors agreed on the poll that the verdict was theirs, and that they had seen the absent juror sign the slip. The Court concluded that, assuming a procedural defect in the inability of the losing party to poll all twelve jurors, the matter was not jurisdictional and was to be treated as other assignments of error.

Two district court cases, Finn v. Carnegie-Illinois Steel Corp., 68 F.Supp. 423 (W.D. Pa. 1946), and Mattice v. Maryland Casualty Co., 5 F.2d 233 (W.D. Wash. 1925), held that a jury cannot be reconvened for a poll. But another district court held it permissible to reassemble a jury soon after its verdict had been recorded where there had obviously been a serious error in the process. Brown v. Gunter, 428 F.Supp. 889 (D. Mass. 1977).

In Progner v. Eagle, 377 F.2d 461 (4th Cir. 1967), the Court of Appeals directed the district court to reconvene the panel from which a jury had been selected so that a voir dire question, omitted in the selection process, could be propounded to the jurors. If, after inquiry, the district court determined that the composition of the trial jury would have been the same, the verdict was to stand. The Court of Appeals explained its action: "Our purpose is simply to prevent, if possible, a retrial of a case once precisely otherwise tried." Progner v. Eagle, supra, at 462. We believe such a policy is desirable.

Not surprisingly, the research of counsel and our own has not uncovered any case similar to the one under consideration. Appraising the situation in the light of modern theory and on the specific facts present here, we conclude the verdict is valid.

The jury had, in fact, agreed upon their finding on Count II, and, although it would not become effective until announced in open court, United States v. Taylor, 507 F.2d 166 (5th Cir. 1975), the verdict was returned in proper

form. Only the trial judge's failure to inquire whether the jurors had reached a verdict on either count before discharging them caused the hiatus. The fact that the jurors had signed the verdict slip establishes that there was no change in their individual opinions between the Friday decision and the Monday open-court session. The defendant gambled upon what the verdict would be by failing to object to its rendition. Having chosen to learn what the jury had decided, there is no reason to now relieve him of the consequences of that choice.

## II.

### The Juvenile Court Transfer Hearing

Common to both charges is the defendant's assertion that the district court proceedings following the hearing in the Juvenile Division of the Territorial Court constituted double jeopardy. The defendant relies upon Breed v. Jones, 421 U.S. 519 (1975), where the Supreme Court decided that the adjudicatory hearing for juveniles under California law was a trial for purposes of double jeopardy. The legislation considered there differs substantially from the Virgin Islands statute, 4 V.I.C. § 176, which reads in relevant part:

"If a child 16 years of age or older is charged with an offense which would be a crime if committed by a person 18 years of age or over, and if the offense is one in which violence was committed on another person, it shall commit the child for proper criminal proceedings to the district court . . . ."

■ The Juvenile Division judge did not hold an adjudicatory hearing—his task was merely to determine if a crime of violence had been committed and whether the defendant had been charged with that crime. The judge's finding was that there was "probable cause to believe" the defendant had committed the offense. This was no more an adjudicatory proceeding than the usual preliminary hear-

48

ing before a magistrate. It does not resemble the hearing in Breed v. Jones, supra, which was characterized as adjudicatory because it included an adjudication of guilt as well as the possibility of imposition of punishment. As the Court said:

"We note that nothing decided today forecloses States from requiring as a prerequisite to the transfer of a juvenile, substantial evidence that he committed the offense charged, so long as the showing required is not made in an adjudicatory proceeding [citations omitted]. The instant case is not one in which the judicial determination was simply a finding of, e.g., probable cause. Rather, it was an adjudication that respondent had violated a criminal statute." Breed v. Jones, supra at 538 n.18.

We therefore find no merit in defendant's contention that the transfer hearing put him in jeopardy in the constitutional sense.

### III.

#### Lesser Included Offense and Former Jeopardy

■ According to defendant, the jury verdict on the weapons count raised the bar of double jeopardy to later prosecution on the murder charge and the homicide conviction should therefore be set aside. In his view, the weapons count was a lesser included offense, and the jury's action in finding him guilty of that crime was an implied acquittal of the murder charge.

The lesser included offense concept may occur in two settings. The first and most common context involves the right to a jury instruction permitting the jury to convict on a lesser offense than the one charged. Fed. R. Crim. P. 31(c). Such cases as Virgin Islands v. Parrilla, 550 F.2d 879 (3d Cir. 1977); Virgin Islands v. Carmona, 422 F.2d 95 (3d Cir. 1970), fall in this category.

The second situation obtains when a guilty verdict on one offense implies a jury's desire to exculpate on another related violation. Concepts of res judicata or collateral

estoppel underlie this variation, and the commonality of fact and violation is significant. Reviewing the doctrine in Price v. Georgia, 398 U.S. 323 (1970), the Supreme Court held that a defendant who had been granted a new trial after conviction for voluntary manslaughter could not thereafter be tried for murder on the same facts. The Court reasoned that since the first jury had a full opportunity to return a verdict on the greater charge, its decision to find guilt on the lesser count amounted to an implied acquittal on the more serious one. See also Green v. United States, 355 U.S. 184 (1957).

The defendant would have us apply that principle here. There are, however, two flaws in his argument. First, the jury did not impliedly acquit on the murder charge—it was simply unable to agree. In the absence of a logical consistency between the two offenses, a conviction on the weapons charge implies no conclusion on the murder charge; a finding of conviction or acquittal was equally possible and no decision on the necessary facts was made by the hung jury. See Simpson v. Florida, 403 U.S. 384 (1971).

■ More fundamentally, defendant's basic premise fails because the weapons charge is not a lesser included offense of murder. 14 V.I.C. § 2251 provides in part:

"§ 2251. Carrying or using dangerous weapons

(a) Whoever—

\* \* \*

(2) with intent to use the same unlawfully against another, has, possesses, bears, transports, carries or has under his proximate control, a dagger, dirk, dangerous knife, razor, stiletto, or any other dangerous or deadly weapon shall—

(A) be fined not more than $1,000 or imprisoned not more than two (2) years, or both; or

(B) if he has previously been convicted of a felony, or has, possesses, bears, transports, carries or has under his proximate control, any such weapon during the commission or attempted

commission of a crime of violence (as defined in section 2253 (d) (1) hereof) shall be fined not more than $2,000 or imprisoned not more than five (5) years, or both, which penalty shall be in addition to the penalty provided for the commission of, or attempt to commit, the crime of violence."

Clearly, the statute makes possession of the dangerous weapon a separate offense from a crime of violence perpetrated with it and provides for an additional penalty. Hence, the statutory language and purpose lend no support to the invocation of the lesser included offense doctrine, but rather manifest the legislature's intent to create a distinct, separable crime. See Brown v. Ohio, 431 U.S. 161, 97 S.Ct. 2221, 53 L.Ed. 187 (1977); Jeffers v. United States, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed. 168 (1977).

Moreover, even if the statute had not been so explicit, the defendant could not prevail since the basic requisites for the doctrine are not present. In Virgin Islands v. Aquino, 378 F.2d (3d Cir. 1967), we stated:

"[I]t has been recognized under the Rule that the lesser offense must be such that it is impossible to commit the greater offense without having first committed it." [citations omitted]

We explained in Virgin Islands v. Carmona, supra:

"First, the lesser included offense must be comprised solely of some but not all of the elements of the offense charged. Second, there must be a genuine conflict of evidence as to an element of the offense charged, which element is not shared by the lesser included offense."

Case law in the state courts is conflicting as to whether it is the evidence adduced at trial or that demanded by the definition of the offense which provides the test for determining the inclusion of one offense within another. See the discussion and review of authorities in Newton v. Maryland, 280 Md. 260, 373 A.2d 262. In the case sub judice, if the actual evidence adduced at trial rule were applied, it could be argued that possession of the knife was inseparable from the act of stabbing the victim. We are convinced, however,

51

that the proper test focuses on the evidence necessary to prove the statutory elements. Such cases as Blockburger v. United States, 284 U.S. 299 (1932), cited by the defendant, and Harris v. United States, 359 U.S. 19 (1959), hold that a single act may constitute violations of more than one statute and are consistent with this approach. The Supreme Court made its position clear in Iannelli v. United States, 420 U.S. 770, 785 n.17 (1975), where it said:

"[T]he Court's application of the test focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes."

See also Brown v. Ohio, supra.

Viewing the criminal activity here against that backdrop reveals the weakness of defendant's position. Although a dangerous weapon may be used to commit a murder, a victim can be killed without the use of any weapon, for example, by strangulation. Moreover, it would be possible for a person to possess a knife in violation of the weapons statute, but in stabbing a person in self-defense be innocent of murder. Thus, a verdict of guilty on either charge would not establish the legal prerequisites for the other.

We conclude that the lesser included offense principle does not apply and the defendant cannot invoke it as a form of double jeopardy.

## IV.

### Other Contentions

Defendant contends that he should not have been tried three times on the murder count. United States v. Castellanos, 478 F.2d 749 (2d Cir. 1973), however, holds to the contrary. As United States v. Corbitt, 368 F.Supp. 881 (E.D. Pa. 1973), aff'd, 497 F.2d 922 (3d Cir. 1974), makes clear, three successive trials for the same offense are not prohibited where the declarations of mistrial were justified by manifest necessity.

The defendant also complains of prejudicial newspaper publicity during the various trials; prejudicial prosecutorial comments in opening to the jury; and testimony of a government witness referring to a fact not included in her statement to the authorities. We are convinced that none of these contentions constitute reversible error on the record in this case.

Accordingly, the judgments of the district court will be affirmed in both of these appeals.