(No. 49326.-

*In re* JOHN M. VITALE, a Minor, Appellee.—(The People of the State of Illinois, Appellant.)

*Opinion filed April 3, 1978.*

232

UNDERWOOD and RYAN, JJ., dissenting.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (Donald B. Mackay and Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, and Lee T. Hettinger, Linda Ann Miller, and Gary W. Adair, Assistant State's Attorneys, of counsel), for the People.

Lawrence G. Dirksen, of Olympia Fields (Gary F. Felicetti, of counsel), for appellee.

*MR. JUSTICE DOOLEY delivered the opinion of the court:

On November 20, 1974, an automobile operated by the minor respondent, John M. Vitale, struck two small children. One died almost immediately, and the other the following day. The investigating officer issued a traffic complaint charging respondent with failing to reduce speed to avoid an accident (Ill. Rev. Stat. 1973, ch. 95½, par. 11—601). On December 23, 1974, the traffic case was heard. Respondent pleaded guilty, was found guilty, and was fined.

On the following day, December 24, 1974, a petition for adjudication of respondent's wardship was filed in the juvenile division of the circuit court of Cook County. The petition, signed by the same police officer who issued the traffic ticket, alleged respondent was delinquent in that on November 20, 1974, while recklessly driving an automobile, he committed involuntary manslaughter resulting in the death of the two minors.

Respondent subsequently moved to discharge, asserting the prosecution of the traffic charge barred the subsequent prosecution of the same offense under the compulsory joinder provision of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 3—3(b)), and the double jeopardy and due process clauses of the Federal Constitution. U.S. Const., amends. V, XIV.

The circuit court dismissed the juvenile petition. The appellate court found that the involuntary manslaughter charge and failure to reduce speed charge were predicated on the same "act" within the meaning of section 3—3(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 3—3(b)). Accordingly, it affirmed the dismissal order (44 Ill. App. 3d 1030). We granted leave to appeal under our Rule 315 (58 Ill. 2d R. 315).

---

* This opinion was prepared by the late Mr. JUSTICE DOOLEY and was adopted and filed as the opinion of the court.

Does the traffic offense for which respondent was tried and convicted, failure to reduce speed to avoid an accident, prohibit a subsequent prosecution for the manslaughter offenses? In our discussion of this broad issue we shall consider our Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 1—1 *et seq.*), as well as the double jeopardy clause of the Federal Constitution.

Section 3—3 of the Criminal Code of 1961 relating to joinder of offenses states:

> "(a) When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense.
>
> (b) If the several offenses are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution, except as provided in Subsection (c), if they are based on the same act.
>
> (c) When 2 or more offenses are charged as required by Subsection (b), the court in the interest of justice may order that one or more of such charges shall be tried separately." (Ill. Rev. Stat. 1973, ch. 38, par. 3—3.)

So also section 3—4, having to do with the effect of a failure to comply with section 3—3, states:

> "(b) A prosecution is barred if the defendant was formerly prosecuted for a different offense, \*\*\* if such former prosecution:
>
> (1) \*\*\* was for an offense with which the defendant should have been charged on the former prosecution, as provided in Section 3—3 of this Code (unless the court ordered a separate trial of such charge) \*\*\*." Ill. Rev. Stat. 1973, ch. 38, par. 3—4.

The appellate court employed as a basis for its decision the definitions of "act" and "conduct" in the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, pars. 2—2, 2—4). An "act" includes "a failure or omission to take action," and "conduct" is "an act or a series of acts,

and the accompanying mental state." The appellate court concluded the acts in both the offense of failure to reduce speed and the offense of involuntary manslaughter were identical, with the exception that in the manslaughter offense a death was involved. Both offenses, it continued, were within the jurisdiction of a single court, the juvenile division of the circuit court of Cook County (Ill. Rev. Stat. 1973, ch. 37, par. 702–2).

The appellate court was likewise of the opinion that the State's Attorney's office had knowledge of the deaths when the traffic charge was prosecuted. Thus all the requirements of section 3–3(b) were met so as to bar subsequent prosecution.

We believe there is a more compelling reason why respondent cannot be prosecuted for the offense of involuntary manslaughter. The fifth amendment to the Constitution of the United States provides:

"*** nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." (U.S. Const., amend. V.)

The fifth amendment applies to the States through the due process clause of the fourteenth amendment. *Benton v. Maryland* (1969), 395 U.S. 784, 23 L. Ed. 2d 707, 89 S. Ct. 2056.

It is well established that certain constitutional protections are available to juveniles. (*In re Winship* (1970), 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068; *In re Gault* (1967), 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428.) Prosecuting a minor in special juvenile adjudicatory proceedings places him in jeopardy within the meaning of the fifth amendment. *Breed v. Jones* (1975), 421 U.S. 519, 44 L. Ed. 2d 346, 95 S. Ct. 1779.

The common law has long recognized double jeopardy. In referring to prior acquittal and prior conviction, Blackstone observed that this principle "is grounded on

this universal maxim of the common law of England, that no man is to be brought into jeopardy of his life more than once for the same offence." 4 W. Blackstone, Commentaries *335. See also 3 E. Coke, Institutes 212-13 (1797); J. Sigler, Double Jeopardy: The Development of a Legal & Social Policy 2-16 (1969).

In determining whether multiple actions are prosecutions for the same offense, the inquiry has historically been whether the same evidence will sustain the proof of each offense. *Gavieres v. United States* (1911), 220 U.S. 338, 342, 55 L. Ed. 489, 490, 31 S. Ct. 421, 422.

In the recent case of *Brown v. Ohio* (1977), 432 U.S. 161, 53 L. Ed. 2d 187, 97 S. Ct. 2221, prosecution and punishment for joyriding—taking an automobile without the owner's permission—prohibited prosecution and punishment for automobile theft, an offense which required proof of intent on the part of the thief to permanently deprive the owner of possession. We are told:

> "The Double Jeopardy Clause of the Fifth Amendment, applicable to the States through the Fourteenth, provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.' *It has long been understood that separate statutory crimes need not be identical—either in constituent elements or in actual proof—in order to be the same within the meaning of the constitutional prohibition.* 1 J. Bishop, New Criminal Law sec. 1051 (8th ed. 1892); Comment, Twice in Jeopardy, 75 Yale L.J. 262, 268-269 (1965). The principal question in this case is whether auto theft and joyriding, a greater and lesser included offense under Ohio law, constitute the 'same offence' under the Double Jeopardy Clause." (Emphasis added.) 432 U.S. 161, 164, 53 L. Ed. 2d 187, 193, 97 S. Ct. 2221, 2224-25.

So here the two separate statutory offenses of failing to reduce speed and involuntary manslaughter need not be identical, either in their basic ingredients or in their proof to be the "same" within the double jeopardy clause.

Any lesser offense is included in the greater offense for the purpose of double jeopardy. This was pronounced as long ago as 1889 in *In re Nielsen* (1889), 131 U.S. 176, 33 L. Ed. 118, 9 S. Ct. 672, where it was observed:

"[W]here *** a person has been tried and convicted for a crime which has various incidents included in it, he cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offense." 131 U.S. 176, 188, 33 L. Ed. 118, 122, 9 S. Ct. 672, 676.

*Brown v. Ohio* (1977), 432 U.S. 161, 53 L. Ed. 2d 187, 97 S. Ct. 2221, exemplifies the meaning of the test to determine whether the two offenses are the same. Joyriding was a lesser included offense in automobile theft. The State, to prove theft, had to establish joyriding plus the requisite intent of the thief to permanently deprive the owner of possession. Nevertheless, the prior prosecution for joyriding barred prosecution for automobile theft.

Here it becomes important to examine the statutory definition of the crimes of involuntary manslaughter and failure to reduce speed.

Involuntary manslaughter was defined by statute at the time of the occurrence thus:

"(a) A person who kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly.

(b) If the acts which cause the death consist of the driving of a motor vehicle, the person may be prosecuted for reckless homicide or if he is prosecuted for involuntary manslaughter, he may be found guilty of the included offense of reckless homicide.

(c) Sentence.
  (1) Involuntary manslaughter is a Class 3 felony.
  (2) Reckless homicide is a Class 4 felony." Ill. Rev. Stat. 1973, ch. 38, par. 9—3.

The issues in reckless homicide are: Did the defendant cause death by driving a motor vehicle? Did the defendant drive the motor vehicle recklessly? Did the defendant drive the motor vehicle in a manner likely to cause death or great bodily harm? Each of these has to be proved beyond a reasonable doubt. Illinois Pattern Jury Instructions, Criminal, No. 7.10 (1968).

Failure to reduce speed to avoid an accident is defined by statute as follows:

"(a) No vehicle may be driven upon any highway of this State at a speed which is greater than is reasonable and proper with regard to traffic conditions and the use of the highway, or endangers the safety of any person or property. The fact that the speed of a vehicle does not exceed the applicable maximum speed limit does not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions. *Speed must be decreased as may be necessary to avoid colliding with any person or vehicle on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.*" (Emphasis added.) Ill. Rev. Stat. 1973, ch. 95½, par. 11—601(a).

The statute imposes the duty upon all motorists to exercise ordinary care, to reduce speed, and to avoid colliding with "any person."

To prove the charge of failing to reduce speed, the State has to prove that the defendant drove carelessly and failed to reduce speed to avoid colliding with a person. Involuntary manslaughter with a motor vehicle, or reckless

homicide, is a reckless operation of a motor vehicle in a manner likely to cause death or great bodily harm (Ill. Rev. Stat. 1973, ch. 38, par. 9—3). "Recklessness" does not require an intent to kill. (See *People v. Parr* (1976), 35 Ill. App. 3d 539, 542; *People v. Bembroy* (1972), 4 Ill. App. 3d 522, 525.) It is a species of violation of duty. Ill. Rev. Stat. 1973, ch. 38, par. 4—6; *People v. Potter* (1955), 5 Ill. 2d 365, 368.

As is usually the situation between greater and lesser included offenses, the lesser offense, failing to reduce speed, requires no proof beyond that which is necessary for conviction of the greater, involuntary manslaughter. Accordingly, for purposes of the double jeopardy clause, the greater offense is by definition the "same" as the lesser offense included within it.

Failing to reduce speed and involuntary manslaughter cannot be fragmented so as to create different offenses. "The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units." *Brown v. Ohio* (1977), 432 U.S. 161, 169, 53 L. Ed. 2d 187, 196, 97 S. Ct. 2221, 2227.

The sequence of the prosecution is immaterial. The conviction of the lesser precludes conviction of the greater, just as conviction of the greater precludes conviction of the lesser. (*Brown v. Ohio* (1977), 432 U.S. 161, 53 L. Ed. 2d 187, 97 S. Ct. 2221; *In re Nielsen* (1889), 131 U.S. 176, 33 L. Ed. 118, 9 S. Ct. 672.) Here it is irrelevant of what offense, failing to reduce speed or involuntary manslaughter, respondent was first convicted.

Both offenses were against the same sovereign, the State of Illinois. The traffic court, as well as the juvenile court, were courts of this same sovereign. (See *Waller v. Florida* (1970), 397 U.S. 387, 25 L. Ed. 2d 435, 90 S. Ct. 1184; *People v. Gray* (1977), 69 Ill. 2d 44.) The trial and conviction in the traffic court barred subsequent action in

the juvenile court of Cook County. The State could not place respondent on trial twice for the "same offense."

Double jeopardy is a constitutional guarantee. It is a matter which cannot be left for State court determination. (*Ashe v. Swenson* (1970), 397 U.S. 436, 442-43, 25 L. Ed. 2d 469, 475, 90 S. Ct. 1189, 1194.) State legislatures are free to define crimes and fix punishments. Once the legislature has acted, however, the courts are prohibited by the due process and double jeopardy clauses from imposing more than one punishment for the same offense. *Brown v. Ohio* (1977), 432 U.S. 161, 165, 53 L. Ed. 2d 187, 193, 97 S. Ct. 2221, 2225.

For the reasons herein expressed, under the double jeopardy clause the conviction on the traffic charge of failure to reduce speed precluded the prosecution in a separate action for involuntary manslaughter.

*Judgment affirmed.*

MR. JUSTICE UNDERWOOD, dissenting:

I have inflicted this lengthy dissent upon the reader because I believe the majority of this court has substantially broadened the double jeopardy rule it purports to follow, reaching a result which is compelled by neither the Federal Constitution nor the constitution or statutes of Illinois.

*Brown v. Ohio* (1977), 432 U.S. 161, 53 L. Ed. 2d 187, 97 S. Ct. 2221, relied on by the majority, does not require the dismissal of the involuntary manslaughter charge levied against Vitale. In *Brown,* the defendant was first convicted of joyriding and later convicted of auto theft. The Ohio court conceded that, under the applicable Ohio statute, joyriding was completely included within the offense of auto theft. On that basis the Supreme Court reversed the subsequent conviction, holding that an included offense is the same offense for the purpose of applying the protections of the double jeopardy clause.

That holding is inapplicable here because under the lesser included offense test also found in the *Brown* opinion, the offense of failing to reduce speed to avoid an accident is not encompassed by the offense of involuntary manslaughter.

This court recently considered whether subsequent prosecutions for aggravated battery and attempted murder were constitutionally impermissible where there had been a prior finding and punishment for indirect contempt of court based upon the identical conduct. In *People v. Gray* (1977), 69 Ill. 2d 44, in which I specially concurred and Mr. Justice Ryan dissented, the court held the subsequent prosecutions precluded. We there said, "To determine whether two actions are prosecutions for the same offense, the test is: Would the same evidence sustain the proof of each offense?" In a similar vein we quoted from the opinion of the Supreme Court in *Brown v. Ohio* (1977), 432 U.S. 161, 166, 53 L. Ed. 2d 187, 194, 97 S. Ct. 2221, 2225:

> "Mr. Justice Powell, speaking for the court in holding that prosecution and punishment for auto theft prohibited prosecution and punishment for joyriding, had occasion to restate the controlling principles which bar successive prosecutions as well as consecutive sentences at a single trial:
>
>> 'The established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in *Blockburger v. United States,* 284 U.S. 299, 304 (1932):
>>
>>> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or

only one, is whether each provision requires proof of a fact which the other does not. ***"

This test emphasizes the elements of the two crimes. "If each requires proof that the other does not, the *Blockburger* test would be satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. ***" *Iannelli v. United States,* 420 U.S. 770 785 n.17 (1975).

***'[Citation.] " 69 Ill. 2d 44, 49-50.

It was also noted that *Brown* held "conviction of a lesser included offense barred prosecution for a greater offense, *** since the lesser offense required no proof beyond that required for the conviction of the greater offense." (69 Ill. 2d 44, 51.) It is precisely the fact that each of the charges here "requires proof of a fact which the other does not," and that proof of the greater offense does not necessarily involve proof of the lesser, which distinguishes this case from *Brown* and *Gray.* Clearly, proof that one failed to reduce the speed of his vehicle to avoid a collision (the traffic offense) does not prove manslaughter, for the traffic offense need not involve death; equally clear is the fact that commission of the crime of involuntary manslaughter (the wardship charge) need not involve an unlawful failure to reduce speed or even the use of a car. In short the traffic violation was not a lesser included offense of the manslaughter charges upon which the wardship proceedings are predicated, and therefore the latter do not fall within the admonition of *Brown* that "Whatever the sequence may be, the Fifth Amendment forbids successive prosecution and cumulative punishment for a greater and lesser included offense." (432 U.S. 161, 169, 53 L. Ed. 2d 187, 196, 97 S. Ct. 2221, 2227.) The majority's conclusion that "the lesser offense, failing to reduce speed, requires no proof beyond

that which is necessary for conviction of the greater, involuntary manslaughter" (71 Ill. 2d at 239) is, of course, simply not correct, for, as above stated, proof of manslaughter need not involve a car at all.

Under the "same evidence" test, the fact that similar evidence is in fact introduced in both trials is irrelevant. If the greater offense can be accomplished without committing the lesser offense, then the greater offense does not embrace the lesser, nothwithstanding that in the particular case the same facts give rise to both offenses. "As is *invariably* true of a greater and lesser included offense, the lesser offense \*\*\* requires no proof beyond that which is required for conviction of the greater \*\*\*." (Emphasis added.) (*Brown v. Ohio* (1977), 432 U.S. 161, 168, 53 L. Ed. 2d 187, 195-96, 97 S. Ct. 2221, 2226.) The crucial evidence is not that actually presented, but the evidence required by the applicable statutes. Our opinions make plain that Illinois has heretofore been among the majority of jurisdictions applying this test in determining what are included offenses. In *People v. Hairston* (1970) 46 Ill. 2d 348, 358, this court quoted *Gavieres v. United States* (1911), 220 U.S. 338, 342, 55 L. Ed. 489, 490, 31 S. Ct. 421, 422, also relied upon in *Gray,* as follows:

"A conviction or acquittal upon one indictment is no bar to a subsequent conviction and sentence upon another, unless the evidence required to support a conviction upon one of them would have been sufficient to warrant a conviction upon the other. The test is not whether the defendant has already been tried for the same *act,* but whether he has been put in jeopardy for the same *offense.* A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and

punishment under the other." (Emphasis added.) This court went on to note:

"Along the same lines, it has been frequently manifested that offenses are not the same if, upon the trial of one, proof of an additional fact is required which is not necessary to be proved in the trial of the other, although the same acts may be necessary to be proved in the trial of each. *Ebeling v. Morgan* (1915), 237 U.S. 625, 59 L. Ed. 1151, 35 S. Ct. 710; *Blockburger v. United States* (1932), 284 U.S. 299, 76 L. Ed. 306, 52 S. Ct. 180; *Gore v. United States* (1958), 357 U.S. 386, 2 L. Ed. 2d 1405, 78 S. Ct. 1280; *Hattaway v. United States* (5th Cir. 1968), 399 F.2d 431; *People v. Garman*, 411 Ill. 279." (46 Ill. 2d 348, 358-59.)

In *People v. Glickman* (1941), 377 Ill. 360, defendant was charged with burglary under the applicable statute, which did not contain the common law requirement of entering at night. Defendant was convicted of attempted burglary under a statute which did require that the attempt be made at night. In support of this conviction, the State argued that attempt was a lesser offense included within burglary, but this court reversed the conviction holding that "the greater crime, burglary, does not contain all of the elements of the lesser, for the element 'in the nighttime' is absent" (377 Ill. 360, 367), although defendant's activity was in fact shown to be at night. See also *People v. King* (1966), 34 Ill. 2d 199; *People v. Higgins* (1967), 86 Ill. App. 2d 202; *People v. Shoemaker* (1975), 31 Ill. App. 3d 724.

Following *Glickman*, the legislature defined an included offense in section 2—9 of the Criminal Code:

"Included offense" means an offense which
(a) Is established by proof of the same or less than all of the facts or a less culpable mental state (or both),

than that which is required to establish the commission of the offense charged, or

(b) Consists of an attempt to commit the offense charged or an offense included therein." (Ill. Rev. Stat. 1975, ch. 38, par. 2—9.)

It thereby incorporated the "same evidence" test (see *People v. Baylor* (1975), 25 Ill. App. 3d 1070, 1074), which is applied although the facts presented in the particular case may actually prove the lesser offense. See *People v. Yanders* (1975), 32 Ill. App. 3d 599.

The essence of the "same evidence" or "required evidence" test of *Blockburger v. United States* (1932), 284 U.S. 299, 304, 76 L. Ed. 306, 309, 52 S. Ct. 180, 182, is "whether each provision requires proof of an additional fact which the other does not." This test, utilized by a majority of American jurisdictions, has been restated by various American courts. In Comment, *Twice in Jeopardy*, 75 Yale L.J. 262 (1965), the author noted these reformulations of the test: (1) the "backwards" test—offenses are not the same unless defendant could have been convicted of the second offense on the evidence needed in the first trial; (2) the "distinct elements" test—"offenses are not the same if each contains an element not included in the other"; (3) the "identity" test—"offenses are the same for double jeopardy purposes only if they are identical in law and fact." (75 Yale L.J. 262, 273.) The Supreme Court of Iowa, in holding that a reckless driving conviction did not bar a subsequent prosecution for manslaughter, stated: "The lesser offense must be composed solely of some but not all elements of the greater crime. The lesser crime must not require any additional element which is not needed to constitute the greater crime. The lesser offense is therefore said to be *necessarily* included within the greater." *State v. Stewart* (Iowa 1974), 223 N.W.2d 250, 252, *cert. denied* (1975), 423 U.S. 902, 46 L. Ed. 2d 134, 96 S. Ct. 205.

The Supreme Court of Ohio in *State v. Best* (1975), 42 Ohio St. 2d 530, 330 N.E.2d 421, a case very similar to

our own, held that the charge of driving a vehicle "at a greater speed than will permit him [the driver] to bring it to a stop within the assured clear distance" (42 Ohio St. 2d 530, 536, 330 N.E.2d 421, 425) is not barred by a prior prosecution for homicide by vehicle because it is not a lesser included offense. The court found that the misdemeanor bore no relationship to the offense of homicide by vehicle, stating:

> "The only common element to the two offenses is that both involve the operation of a motor vehicle. No element of speed or distance ahead is involved in the offense of homicide by vehicle, and no element of causing death or of violation of the specific statutes cited in [the homicide statute] is involved in the offense of failing to keep an assured-clear-distance ahead. Although both offenses arose out of the same transaction, they are separate and distinct offenses." 42 Ohio St. 2d 530, 536, 330 N.E.2d 421, 425.

In the recent, post-*Brown* case of *Virgin Islands v. Smith* (3d Cir. 1977), 558 F.2d 691, the court of appeals acknowledged that *Brown* followed the *Blockburger* rule, which says that it is the evidence demanded by the definition of the offense, not the evidence adduced at trial, which determines the inclusion of one offense within another. In *Smith,* the defendant asserted that a prior conviction of possession of a dangerous weapon barred prosecution for a murder committed with that weapon. The court disagreed, stating:

> "The Supreme Court made its position clear in *Iannelli v. United States,* 420 U.S. 770, 785 n.17, 95 S. Ct. 1284, 1294, 43 L. Ed. 2d 616 (1975), where it said:
>
> > '[T]he Court's application of the test focuses on the statutory elements of the offense. If

each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.'

See also *Brown v. Ohio,* supra.

Viewing the criminal activity here against that backdrop reveals the weakness of defendant's position. Although a dangerous weapon may be used to commit a murder, a victim can be killed without the use of any weapon, for example, by strangulation. Moreover, it would be possible for a person to possess a knife in violation of the weapons statute, but in stabbing a person in self-defense be innocent of murder. Thus, a verdict of guilty on either charge would not establish the legal prerequisites for the other." 558 F.2d 691, 696.

Similarly, in *United States v. Cumberbatch* (2d Cir. 1977), 563 F.2d 49, the court cited *Brown* in holding that the offense of carrying a firearm unlawfully during the commission of a felony is not included in the offense of bank robbery with the use of a dangerous weapon, and that conspiracy to commit bank robbery is not included in the offense of bank robbery. For other cases holding this weapons offense not included in armed robbery see *Coates v. Maryland* (1977), 436 F. Supp. 226, also citing *Brown,* and *United States v. Crew* (4th Cir. 1976), 538 F.2d 575, *cert. denied* (1976), 429 U.S. 852, 50 L. Ed. 2d 127, 97 S. Ct. 144.

*Brown's* reiteration of the "same evidence" test of *Blockburger* evinces once again the Supreme Court's consistent refusal to adopt the continuing arguments of some of its members for "episodic immunity" or a "same transaction" test which would generally require the joinder in one proceeding of "all the charges against a defendant that grow out of a single criminal act, occurrence, episode,

or transaction." (*Ashe v. Swenson* (1970), 397 U.S. 436, 453-54, 25 L. Ed. 2d 469, 481, 90 S. Ct. 1189, 1199; *Brown v. Ohio* (1977), 432 U.S. 161, 170, 53 L. Ed. 2d 187, 197, 97 S. Ct. 2221, 2227 (Brennan & Marshall, JJ., concurring).) (See collection of dissents cited in *Thompson v. Oklahoma* (1977), 429 U.S. 1053, 1054, 50 L. Ed. 2d 770, 97 S. Ct. 768 (Brennan & Marshall, JJ., dissenting from denial of *certiorari*).) Nor, until now, has this court construed our constitution or statutes as incorporating a "same transaction" test. *People v. Hairston* (1970), 46 Ill. 2d 348, 358; *People v. Allen* (1937), 368 Ill. 368, 379.

Directly in point is our recent clarification in *People v. King* (1977), 66 Ill. 2d 551, of the confusion resulting from earlier opinions considering the multiple prosecution and sentencing questions. We there undertook a comprehensive discussion of the constitutional and statutory issues involved, concluding:

> "[W]e are aware of no constitutional limitations against multiple convictions and concurrent sentences for different offenses arising from multiple acts which are incidental to or motivated by some greater criminal objective. Multiple convictions and *consecutive* sentences have been permitted against claims of double jeopardy for offenses based on a single act but requiring proof of different facts. *Gore v. United States* (1958), 357 U.S. 386, 2 L. Ed. 2d 1405, 78 S. Ct. 1280; *Blockburger v. United States* (1932), 284 U.S. 299, 76 L. Ed. 306, 52 S. Ct. 180." (66 Ill. 2d 551, 565.)

Even more precisely in point, perhaps, is the following:

> "Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. Multiple convic-

tions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts. "Act," when used in this sense, is intended to mean any overt or outward manifestation which will support a different offense. We hold, therefore, that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered." 66 Ill. 2d 551, 566.

The lesser included offense doctrine evolved at common law as an aid to the prosecution when it failed to prove all the elements necessary for a guilty verdict on the crime charged in the indictment. (*People v. Mussenden* (1955), 308 N.Y. 558, 562, 127 N.E.2d 551, 553; *United States v. Harary* (2d Cir. 1972), 457 F.2d 471, 478.) A strict adherence to the "same evidence" standard protects defendants from too broad.an application of this doctrine and a resultant conviction of an offense not charged. (*People v. Glickman* (1941), 377 Ill. 360; *People v. Rainbolt* (1977), 52 Ill. App. 3d 374 (criminal trespass to vehicle not a lesser offense included in charge of theft of a vehicle, conviction of criminal trespass to vehicle on theft indictment reversed); *People v. Yanders* (1975), 32 Ill. App. 3d 599 (theft not lesser offense included in robbery, theft conviction on basis of robbery indictment reversed); *People v. Shoemaker* (1975), 31 Ill. App. 3d 724 (burglary indictment will not support theft conviction since proof of burglary need not include all essential elements of theft); *People v. Higgins* (1967), 86 Ill. App. 2d 202 (aggravated battery not included within involuntary manslaughter, conviction of aggravated battery on involuntary manslaughter charge reversed).) In my opinion, a charge of

involuntary manslaughter, as here, would not support a conviction for failing to reduce speed. In its desire to protect this defendant, the majority has eroded the important protections offered other defendants by the "same evidence" doctrine.

Nor do the compulsory joinder provisions of the Criminal Code relied on by the appellate court apply to the charges made against Vitale. It is clear that section 3—3(b) requires joinder of the traffic charge and the manslaughter charge if both arose from the "same act," and that in such circumstance section 3—4(b)(1) would effectively bar a separate prosecution of the manslaughter charges subsequent to conviction on the traffic charge unless separate trials had been ordered by the trial court pursuant to section 3—3(c). If, however, the charges are not based on the same act, they need not be joined in a single prosecution, and conviction of the traffic violation does not preclude subsequent prosecution of the manslaughter charges. See Ill. Ann. Stat., ch. 38, par. 3—3, Committee Comments, at 202 (Smith-Hurd 1972).

The appellate court found that the involuntary manslaughter charge and the charge of failure to reduce speed to avoid an accident were both based on the "act" of driving a motor vehicle in a manner likely to cause a collision, with such act resulting in collision. The specific act for which Vitale was convicted in traffic court was his failure to decrease his speed to avoid colliding with the pedestrians. (Ill. Rev. Stat. 1973, ch. 95½, par. 11—601(a).) In some circumstances such an act may also be sufficient, should there be a resultant death, to support an involuntary manslaughter or reckless homicide prosecution, since this act may have been performed recklessly and was "likely to cause death or great bodily harm to some individual." (Ill. Rev. Stat. 1973, ch. 38, par. 9—3(a).) However, there is no showing here that the manslaughter rests solely or even principally upon the

failure to reduce speed.

The police report of the accident, contained in the record before us, states that Vitale struck and killed two 5-year-old children who were crossing the street in a marked school crosswalk under the direction of a uniformed crossing guard displaying a stop sign in the center of the street. According to the report, Vitale stated that his attention was diverted to his left and when he looked back it was too late to stop. The investigating officer was of the opinion that the skid marks indicated that defendant was traveling at a speed in excess of 50 miles per hour. The accident occurred in a zone normally limited to 35 miles per hour, but in which a 20 miles per hour school speed limit was in effect. The police report states that there were seven official speed warning signs within 1 3/4 blocks of the crosswalk. In addition, the report indicates that three of the vehicle's four brakes tested out as faulty.

The petition for wardship may have been based on Vitale's acts in permitting his attention to be diverted while driving at a high rate of speed, failing to appropriately maintain the vehicle's braking system, failing to note the seven school zone and speed warning signs, initially raising the speed of his auto to a dangerous level, or by disobeying the commands of the crossing guard. While we do not now know which of that series of acts the State intended to rely on at trial, one certainly cannot now say that it would rely solely upon Vitale's failure to reduce speed to the exclusion of his other misconduct.

In *People v. Griffin* (1967), 36 Ill. 2d 430, the State charged defendant with reckless driving, but the court found the information which the State filed in that case so imprecise that the defendant would not be able to plead a judgment thereon as a bar to a future prosecution arising from the same facts. The particular act or acts which constituted reckless driving may have been any one of a number of acts, such as "driving while intoxicated, or

running through a stop-light, or driving at an excessive speed or without brakes, lights or horn; he may have been driving on the wrong side of the road or on the sidewalk, or without keeping proper lookout for children, or any one of dozens of things which might constitute wilful and wanton disregard for the safety of persons or property." 36 Ill. 2d 430, 432, citing *People v. Green* (1938), 368 Ill. 242, 254-55. The importance of *Griffin* here is the court's discussion of the statutory compulsory joinder protections:

> "It does not appear that the compulsory joinder provision of the Criminal Code (Ill. Rev. Stat. 1965, chap. 38, par. 3—3,) would protect him against subsequent prosecution for each of the specific [traffic] offenses. Section 3—3 requires that offenses be prosecuted together only 'if they are based on the same act.' The comments of the drafting committee make it clear that this provision was not meant to require joinder of separate offenses resulting from the same 'conduct' (Committee Comment, S.H.A. chap. 38, par. 3—3,) which is defined as 'an act or a series of acts.' (Ill. Rev. Stat. 1965, chap. 38, par. 2—4.) Since each act in the example stated would be a separate offense, and might, in appropriate circumstances, constitute reckless driving, the compulsory joinder provision would not prevent successive prosecutions for reckless driving and for each of the other violations." 36 Ill. 2d 430, 433-34.

The committee comments to this section state that "Section 3—3 is not intended to cover the situation in which several offenses—either repeated violations of the same statutory provision or violations of different provisions—arise from a series of acts which are closely related with respect to the offender's single purpose or

plan." (Ill. Ann. Stat., ch. 38, par. 3—3, Committee Comments, at 202 (Smith-Hurd 1972).) Of course, involuntary manslaughter is a "nonintent" offense, and the minor here had no "purpose or plan," but his conduct did involve multiple offenses—violations of different statutes arising from a series of acts contributing to the result with which he is now being charged.

It is clear that section 3—3 cannot be applied to bar the wardship proceedings here, where the State may seek to prove the homicide allegations by showing any or all of a number of different acts by respondent to be reckless and likely to cause death or great bodily harm.

By its opinion the majority has adopted, *sub silentio,* the "episodic immunity" or "same transaction" test unsuccessfully urged by the minority in the United States Supreme Court in *Ashe* and *Brown,* and rejected by both this court and our General Assembly, as earlier noted. In accomplishing this result both the Federal constitution and Federal case law are misinterpreted. If my colleagues feel compelled to expand the protections of the double jeopardy clause, I would have thought it preferable to do so by enlarging the prior interpretations of article 1, section 10, of our own constitution instead of misapplying Federal constitutional provisions. By choosing the latter course the majority has muddied what have been reasonably clear waters.

While I find no bar to prosecution of this wardship proceeding, I would call attention to the sentiments in *United States v. Wilson* (1975), 420 U.S. 332, 343, 43 L. Ed. 2d 232, 241, 95 S. Ct. 1013, 1021. Generally speaking, considerations of fairness and finality, as well as judicial efficiency and economy, would seem to indicate the undesirability, even though permissible, of successive prosecutions for offenses arising from the same "episode" or "transaction." This philosophy might well guide the exercise of prosecutorial discretion, but the difficulty of

an absolute rule is amply demonstrated by the majority holding here which permits a defendant who has caused two deaths to escape punishment other than a nominal fine.

I would reverse the judgments of the appellate and circuit courts and remand to the circuit court of Cook County for further proceedings.

MR. JUSTICE RYAN joins in this dissent.